In re MULTECH CORPORATION dba
Heavy Haul fdba Muv-all
Trailers, Debtor.

Edward F. SAMORE, Trustee, Plaintiff,

v.

Alice BOSWELL, Defendant.

Alice C. BOSWELL, Plaintiff,

v.

MULTECH CORPORATION, Defendant.

Bankruptcy No. 82–04008.
Adv. Nos. 82–0803, 82–0806.

United States Bankruptcy Court,
N.D. Iowa.

March 20, 1985.
As Amended May 21, 1985.

Sam S. Killinger, Sioux City, Iowa, for landlord.

Donald H. Molstad, Sioux City, Iowa, for trustee.

A. Frank Baron, Sioux City, Iowa, E.H. Philiph, Sibley, Iowa Multech Corp.

## MEMORANDUM OPINION ON TRUSTEE'S APPLICATION FOR ADJUDICATION OF LAW POINTS

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is an Application for an Adjudication of Law Points which requires the Court to determine the consequences that flow from a postpetition assumption of an unexpired lease. In particular, the Court must decide:

(1) whether 11 U.S.C. § 502(b)(7) limits the amount of damages a lessor can claim when an unexpired lease is assumed in bankruptcy proceedings and then subsequently forfeited because of a default by the Debtor-in-Possession.

(2) whether the lessor's claim for damages is secured by virtue of a security interest granted to the lessor by Debtor for the purpose of providing adequate assurance of future performance and payment of prepetition arrearages.

Appearing for the parties in this matter were Attorney Donald Molstad for the Trustee and Attorney Sam Killinger for the landlord.

The first issue presented for decision is whether 11 U.S.C. § 502(b)(7) operates as a ceiling on the amount of damages a landlord can claim when a lease that was assumed postpetition is subsequently breached by the Debtor-in-Possession (Debtor). The pertinent facts can be briefly outlined.

1. In October of 1975, Alice Boswell and the Debtor, Multech Corporation, entered

into a lease agreement involving certain industrial property located in Sioux City, Iowa. The lease provided for a ten-year term running from December 1, 1975 to November 30, 1985. The agreement between the parties was a "net lease" arrangement requiring Multech to assume financial responsibility for real estate taxes, insurance, utilities and repairs and maintenance on the building in addition to making monthly payments to Boswell. The property was used by Multech as a manufacturing plant for heavy industrial trailers.

2. On January 11, 1982, Multech initiated Chapter 11 proceedings under the Bankruptcy Code. At the time, it was in arrears on the rental payments and real estate taxes. Shortly after the filing, Boswell requested relief from the automatic stay and also filed a motion to compel assumption or rejection of the unexpired lease by Debtor. *See* 11 U.S.C. § 365(d)(2).

3. Hearing was held on the matter and on February 25, 1982, the Court entered an order finding that assumption was in the best interest of Multech and allowing it to assume the unexpired lease on the terms and conditions specified in the order. The order contained a drop dead provision providing for immediate relief from the automatic stay upon verified application by Boswell's attorney that Multech had not complied with the terms of the Court's order. The order also contained a provision requiring Debtor to grant Boswell a security interest in certain personalty of the Debtor for purpose of providing adequate assurance of future performance and payment of the existing arrearages.

4. Unfortunately Multech's performance under the assumed lease was short-lived and the automatic stay was lifted on

May 13, 1982, to allow Boswell to pursue his state law remedies. Pursuant to a state court forcible entry and detainer action, Boswell regained possession of the leasehold on July 2, 1982.

5. On August 17, 1982, Multech's Chapter 11 proceedings were converted to a Chapter 7 liquidation. The lease was never formally rejected by either Multech or the Trustee. Other facts will be explicated when necessary for a resolution of the issues.

The parties agree that section 502(b)(7) [1] is applicable to these facts but apparently dispute what kinds of costs and expenses are subsumed in the term rent. Although the record is not crystal clear, the Trustee is apparently willing to pay all prepetition and postpetition arrearages up to July 2, 1982 when Boswell obtained possession of the premises. From the date of possession, the Trustee acknowledges that Boswell is entitled to one year's rent, taxes, utilities and insurance but contests any claim for past damages stemming from Debtor's failure to maintain the premises and the projected maintenance expenses for the one-year period following the relinquishment of the property by the Debtor.

The other controversy between the parties concerns the nature of the landlord's claim for future damages. Boswell contends, by virtue of a provision in the February 25th order granting him a security interest in certain personalty of the Debtor, his claim, whether for past or future damages,[2] is secured to the extent of the value of the collateral. Trustee, on the other hand, avers Boswell's secured claim is limited to unpaid prepetition and postpetition rent and charges incurred when the Debtor-in-Possession was still in possession of the premises. Conversely, the landlord's

---

1. In the main § 502(b)(7) limits a landlord's claim for damages from the termination of a lease to the greater of one year's rent reserved under the lease or 15% of remaining term not to exceed three years plus any unpaid rent due under the lease.

2. For convenience and to track the distinction made by the Trustee, the Court has separated Boswell's claim for damages into two components. Past damages refer to all expenses and liabilities incurred when Debtor was still in possession of the property, that is, all prepetition and postpetition arrearages incurred as result of Debtor's occupancy of the premises. Future damages refer to the liabilities flowing from the subsequent abandonment of the leasehold by Debtor.

750

claim for future damages according to the Trustee is a general unsecured claim.

In assessing the nature of the claim for future damages, the Trustee has ignored the fact that the unexpired lease was assumed by Multech in its Chapter 11 proceedings. Absent the postpetition assumption, the Trustee would be on firm ground in characterizing Boswell's right to future damages as a general unsecured claim. 11 U.S.C. § 502(g), § 365(g)(1). Different treatment, however, is afforded by the Code for executory contracts that are assumed postpetition and then subsequently rejected. In particular, section 365(g) provides in relevant part:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
> \* \* \* \* \* \*
>
> 2. if such contract or lease has been assumed under this section or under a plan confirmed under Chapter 9, 11, or 13 of this title
> (A) if before such rejection the case has not been converted under section 1112 or 1307 of this title, at the time of rejection; or
> (B) if before such rejection the case has been converted under section 1112 or 1307 of this title
> (i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or
> (ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

■ By defining the time at which a rejection of an assumed contract or lease constitutes a breach,[3] section 365(g) clearly indicates that the act of assumption creates an administrative expense obligation of the

particular proceedings in which the contract or lease was assumed. Consequently, if a lease is assumed in Chapter 11 proceedings, the liabilities flowing from the rejection of that lease will ever after be regarded as a Chapter 11 administrative expense. Likewise, the rejection of a lease that was assumed in Chapter 7 proceedings gives rise to a Chapter 7 administrative expense claim for the resulting damages.

■ Although section 365(g) does not speak directly of its effect on priority, the hierarchy set out by this provision has important implications when reorganization proceedings are converted to a Chapter 7 case. Specifically, section 726 provides that in a case which has been converted to Chapter 7 proceedings, the Chapter 7 administrative expense claims have priority over any administrative expenses incurred prior to the conversion. Therefore, Boswell's damage claim is entitled to priority as an administrative expense second in line for distribution after payment of the Chapter 7 administrative expenses. § 726(b); § 507(a)(1).

■ The *logic behind granting administrative* expense status to liabilities flowing from the rejection of an assumed contract or lease is quite simple. The filing of bankruptcy creates a new juridical entity that is separate and apart from the Debtor which existed prior to bankruptcy proceedings. For instance, in Chapter 11 proceedings the prebankruptcy Debtor as a juridical entity ceases to operate the business and control is transferred to a distinct legal entity, usually the Debtor-in-Possession, who runs the business under supervision of the court. *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976). The assumption of an executory contract by a Debtor-in-Possession is an act of administration creating an obligation of the estate which is legally distinct from the obligations that

---

**3.** It could be argued that section 365(g) is not applicable to the present situation. That is, this section speaks in terms of when a rejection constitutes a breach whereas the facts of this case are in the opposite posture—a breach without formal rejection. The Court considers this a semantic issue without importance since the drop dead provision in February 25th order in essence provided that any subsequent default was tantamount to a rejection of the lease. Consequently, section 365 is applicable to this case.

existed prior to an assumption of the contract. *See generally,* 1 *Norton Bankruptcy Law and Practice* ¶ 23.05 (1981); 3 *Collier on Bankruptcy,* ¶ 365.08, p. 365–41 (15th ed. 1984). In contrast to the rejection of unassumed contract which arises from a transaction with the prebankruptcy Debtor, the rejection of an assumed contract arises directly from a transaction with the Debtor-in-Possession. Thus, it is the Debtor-in-Possession which has caused legally cognizable injuries and the claims arising from those actions are entitled to priority as an administrative expense. *In re Mammoth Mart,* 536 F.2d at 955.

■ Since the damages arising from the rejection of an assumed lease give rise to an administrative expense, it follows that section 502(b)(7), contrary to the parties' assumption, would not operate to limit those damages. Section 502 is concerned with the allowance of claims or interests while section 503 governs the allowance of administrative expenses. Moreover the limitation provided by section 502(b)(7) "is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent general unsecured creditors from recovering a dividend from the estate." House Report No. 95–595, 95 Congress 1st Session (1977); Senate Report No. 95–989, 95 Congress, 2nd Session (1978), 5 U.S. Code Congress. & Admin.News 5787, 6309, 5849 (1978). That purpose is no longer germane in the case of an assumed contract or lease, since the resulting obligations and liabilities are elevated to a priority status and no longer fall in the class of general unsecured creditors.

**4.** The Court can easily conjure up cases where the administrative expense obligations from a rejection of an assumed lease could be ruinous. Such a situation might arise if the Debtor-in-Possession assumed a longterm lease of a building designed for a single purpose use, but which use, other than for the continuation of the Debtor-in-Possession's business, is unfeasible due to changes in technology, regulatory laws or economic factors. In the case of such a building, a subsequent rejection could result in an astronomical administrative expense, saddling the

Finally, as noted in the legislative history, this section "does not apply to limit administrative claims for use of the leased premises to which the landlord is otherwise entitled." *Id.* Necessarily then, this section does not apply to limit a landlord's claim for damages arising from the breach or rejection of an assumed contract since these are administrative expenses to which the landlord becomes entitled as a consequence of the postpetition assumption.

Furthermore, not limiting a landlord's administrative expense arising from rejection of an assumed contract is only fair since the assumption of an executory contract reflects a business judgment by a Debtor-in-Possession that some benefit will inure to the estate and thus to unsecured creditors from assuming this particular prepetition obligation. Should that judgment prove wrong, the unsecured creditors may be harmed by the amount of the landlord's claim, particularly in the case of a long-term lease;[4] nonetheless, they rather than the lessor should bear the risk since the assumption was initially intended to benefit them.

■ The next question that arises is whether section 503(b)(1)(A) can be utilized to limit the damages arising from the subsequent rejection of the lease. In main, this section limits administrative expenses to "the actual, necessary costs and expenses of preserving of estate."[5] Unfortunately, for the unsecured creditors, the Court concludes it cannot.

■ The assumption of an executory by a Trustee or Debtor is a decision that cannot be made without court approval. § 365(a). *See also,* 2 *Collier on Bankruptcy,* ¶ 365.03, p. 365–13. Because an

bankruptcy estate with an "albatross" in a manner similar to that of Coleridge's Ancient Mariner.

**5.** Not all claims that are entitled to full administrative expense priority arise from transactions that were necessary to preserve or rehabilitate the estate. *See Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (first priority for tort claims based upon negligence attributable to Debtor-in-Possession.)

executory contract has been scrutinized by the Court prior to assumption, the liabilities and expenses resulting from a subsequent rejection are automatically granted administrative expense priority that will not be subject to further limitation by section 503. *See, e.g., In re Chugiak Boat Works, Inc.,* 18 B.R. 292, 295 (Bkrtcy.D.Alaska 1982). More bluntly, the Court would not permit the Debtor-in-Possession to assume an executory contract or lease unless the assumption was in the best interest of the estate. Having made that determination at the outset the liabilities and expense arising from rejection of an assumed contract, unlike other costs of administration that have not been subject to court scrutiny, are no longer vulnerable to the limitations on administrative expenses imposed by section 503. The onus is on the Court and the Debtor-in-Possession to evaluate carefully the potential benefits and burdens inhering in an executory contract because, if improvidently assumed, the burdens imposed by the contract may be overwhelming. *Cf., In re City Stores Co.,* 21 B.R. 809, 812 (Bkrtcy.S.D.N.Y.1982) (An executory contract cannot be assumed in part and rejected in part; thus debtor cannot assume an unexpired lease for purpose of securing a profit from its assignment and then reject the damages provision under the lease when assignment fails and debtor defaults on its obligation thereunder). As is evident from *City Stores*, the price for securing the potential margin of benefit through assumption of an executory contract may be high. Indeed, the cost of assumption is nothing short of complete mutuality and requires performance in full just as if bankruptcy had not intervened. 2 *Collier on Bankruptcy*, ¶ 365.01 at 365–11 (15th ed. 1984).

To briefly summarize, the Court concludes that Boswell's claim for damages from the rejection of the unexpired lease constitutes an administrative expense entitled to priority second only to the administrative expenses incurred in the subsequent Chapter 7 proceedings. The Court further concludes that Boswell's claim for damages is not limited by the provisions of the Bankruptcy Code and should be allowed subject only to any limitations on damages imposed by state law.

One question remains. That is, to what extent, if any, is Boswell's claim for damages secured by virtue of the security interest granted to him by Debtor to provide adequate assurance of future performance. The provision in the February 25th order granting Boswell a security interest stated:

> Multech is to give Boswell a security interest perfected by appropriate financing statement in and to all of the equipment, inventory, and accounts receivable, including all proceeds thereof. Said security agreement is not to impair Multech's right to sell and buy said assets in the ordinary course of business. Multech retains the right to sell what is known as "the Canton Plant" on the condition that the full amount of the arrearages referred to above are paid immediately with the proceeds of said sale.

The security arrangement entered into by Boswell and the Debtor was an effort to comply with section 365(b)(1). This section sets out three requirements that must be met before an executory contract or lease in which there is an existing default can be assumed. Specifically, the Debtor must either cure or provide adequate assurance that it will promptly cure the default; the nondebtor party must be fully compensated for any pecuniary loss resulting from the default and Debtor must provide adequate assurance of future performance under the contract.

■ The Trustee seeks to limit the security interest to all costs and expenses incurred while Multech was in possession of the premises, that is, prepetition and postpetition arrearages. As for the damages arising from the subsequent breach of the lease and abandonment of the premises pursuant to the drop dead provision in the February 25th order, the Trustee contends this type of claim was not contemplated by the security agreement. To support the distinction between these two claims for damages, the Trustee relies on *In re Sapolin Paints, Inc.,* where the court in explain-

ing the adequate assurance language quoted the Report of the Commission on Bankruptcy Laws:

> The language "is adopted from Uniform Commercial Code § 2–609(1)." What constitutes "reasonable time thereafter" for curing defaults or an "adequate assurance of future performance" must be determined by consideration of the facts of the proposed assumption. Cf. Official Comment 4 To Uniform Commercial Code § 2–609 (1972 Edition). *It is not intended, however, that any non-debtor party should acquire greater rights in a case under the act then he has outside the act.* Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess. Pt. II 156–57 (1973).

5 B.R. 412, 420 (Bkrtcy.E.D.N.Y.1980) (emphasis added).

Essentially, the Trustee argues that the landlord's claim for future damages absent the security agreement is a general unsecured claim. Therefore, the security agreement cannot be used by Boswell to elevate what would otherwise be an unsecured claim to the exalted status of a secured one since Boswell should not acquire greater rights in bankruptcy than he would have outside of bankruptcy. This argument overlooks several critical facts. First, Boswell's right to future damages is a priority claim and not a general unsecured one.

Secondly, the Commission's report makes clear that the adequate assurance of future performance language was only intended to apply to the assumption of executory contracts not the assumption of unexpired leases.[6] This limitation explains the applicability of the Uniform Commercial Code in determining what kind of assurances would fulfill this requirement and also provides some illumination as to what the Commission meant by noting that the nondebtor party to a contract should not acquire greater rights in bankruptcy than he would have outside of bankruptcy. In particular,

if the adequate assurance offered by the Debtor would satisfy the prevailing commercial standards outside of bankruptcy, then the nondebtor contracting party cannot demand greater assurance merely because the Debtor happens to be in bankruptcy. It does not preclude, as the Trustee so strenuously argues, the elevation of the landlord's claim to a secured status if the granting of a security interest was necessary to fulfill the requirements of section 365(b).

Since the granting of the security interest was intended not only to provide adequate assurance that Multech would cure the existing default but also to assure that Multech would perform its future obligations under the lease, the Court cannot find any justification for truncating the reach of that security agreement in the manner suggested by the Trustee. Accordingly, Boswell's claim, whether for past or future damages, is secured to the extent of the value of the collateral covered by the parties' security agreements.

Many factual issues remain unresolved in these two adversaries. Particularly, the burden is on Boswell to prove both the incidence and measure damages incurred as a result of its transactions with the Debtor-in-Possession. Therefore, the Court will set a two-hour damage hearing in this matter so Boswell can prove up his damages; and

IT IS SO ORDERED.

---

**6.** Although the Commission only intended this requirement to extend to executory contracts, Congress deemed it appropriate to also require adequate assurance of future performance in the case of an unexpired lease.