**In re NORWEGIAN HEALTH SPA, INC., d/b/a U.S.A. Fitness World, Debtor.**

**Bankruptcy No. A86–07765–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 4, 1987.

**508**

Grant T. Stein, Alston & Bird, Atlanta, Ga., for Life Ins. Co. of Georgia.

James W. Dilz, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for Norwegian Health Spa, Inc., d/b/a U.S.A. Fitness World.

## ORDER

W.H. DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on a motion for payment of administrative expense filed on June 22, 1987, by Life Insurance Company of Georgia ("LIG"). Following a hearing on the motion on August 5, 1987, the Court requested briefs from the parties in support of their positions on the issue of whether pre-petition arrearages on obligations under a lease become administrative expenses when the debtor/lessee assumes the lease and subsequently defaults. The relevant facts are as follows.

The debtor, Norwegian Health Spa, Inc., filed its voluntary Chapter 11 petition on October 16, 1986. At the time of the filing, the debtor was in arrears under a lease of non-residential real property at the Northlake II Shopping Center in DeKalb County, Georgia, where the debtor operated a health and exercise club. LIG is the landlord under the Northlake II lease.

On December 15, 1986, the debtor filed a motion to assume the unexpired lease for the Northlake II location. The motion stated that assumption of the lease, which was to expire by its stated terms on March 31, 1987, would be in the best interests of creditors and the debtor's estate.

LIG and the debtor subsequently negotiated a consent order approving the assumption of the lease. The consent order provided that the debtor would cure the pre-petition arrearage in the amount of $29,-771.37 and the post-petition arrearage in the amount of $17,036.38 by making two equal lump-sum payments on February 15 and March 15, 1987. If the debtor made such payments and all payments under the assumed lease, the order provided that LIG would enter into a new lease with the debtor for the Northlake II location beginning April 1, 1987. The consent order further stated that, in the event of a default in payments by the debtor and failure to cure such default after notice, the automatic stay would be lifted without further order to allow LIG to take possession of the premises and to exercise its rights and remedies available under contract or applicable law.

The consent order approving the assumption of the lease was entered on January 23, 1987, and served on all creditors and other parties in interest. Any objections to the order were to be filed by February 13, 1987. No objections were filed, and the order became final.

The debtor was unable to make the first lump-sum payment due on February 15, 1987. After further attempts at settlement, LIG took possession of the Northlake II premises on March 11, 1987.

The debtor has subsequently entered into a new lease at another location. After stipulating that LIG held a valid landlord's lien on the exercise equipment located at Northlake II, the debtor was permitted to move the equipment to its new location.

LIG's motion for payment of administrative expense seeks administrative priority for a claim of $41,811.67, representing all arrears remaining due under the assumed lease, plus other charges. The debtor asserts that the pre-petition component of the claim is not entitled to administrative expense priority, since the estate received no benefit from this portion of the claim. The debtor agrees that rent and other charges which accrued during the debtor's post-pe-

tition use of the leased premises are administrative expenses.

In support of its position, LIG relies principally on the case of *In re Multech Corp.*, 47 B.R. 747 (Bankr.N.D.Iowa 1985), which held that a landlord under a lease which had been assumed and subsequently breached by a Chapter 11 debtor was entitled to administrative expense priority for the full amount of the claims under the lease.[1] The *Multech* court reached this conclusion based in part on 11 U.S.C. § 365(g)(2), which provides that the rejection of a lease which had been previously assumed constitutes a breach of the lease at the time of rejection (or immediately before the date of conversion, if the lease was assumed before the case was converted and rejected after conversion). The Court reasoned as follows:

> By defining the time at which a rejection of an assumed contract or lease constitutes a breach, section 365(g) clearly indicates that the act of assumption creates an administrative expense obligation of the particular proceedings in which the contract or lease was assumed. Consequently, if a lease is assumed in Chapter 11 proceedings, the liabilities flowing from the rejection of that lease will ever after be regarded as a Chapter 11 administrative expenses.

*Multech*, 47 B.R. at 750 (footnote omitted).

This Court can find no flaw in the reasoning of the *Multech* opinion, notwithstanding the resulting detriment to unsecured creditors (which was also addressed in the *Multech* case). However, the debtor asserts that § 365(g)(2) has no application to this proceeding because the lease in question was not formally rejected.[2] As stated earlier, § 365(g)(2) merely indicates

that rejection of a previously assumed lease gives rise to a post-petition claim for breach, since § 365(g)(2) states that such rejection constitutes a post-petition breach. This leads this Court to the conclusion that it is the act of assumption which results in the lease obligations being administrative expenses and not the act of formal rejection. If a debtor breaches an assumed lease, the breach occurs post-petition, whether or not the debtor formally rejects the lease and triggers the application of § 365(g).

Furthermore, assumption of a lease is intended to benefit the estate. The debtor in this case represented in its motion to assume that assumption was in the best interests of the estate, and the debtor's creditors had an opportunity to object to the order approving assumption of the lease. The debtor assumes the burden of a lease along with its benefits. *See, e.g., Schokbeton Indus., Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 175 (5th Cir.1972). One of the burdens assumed is the burden to cure pre-petition arrearages or other default pursuant to § 365(b)(1). Since assuming such a burden was intended to benefit the estate, and the Court approved the assumption based on such a finding, the claim arising from the debtor's breach of the obligation to cure must be deemed an administrative expense.

In fact, the *Multech* court held that, since assumption of a lease had already been subject to the Court's scrutiny and a finding that assumption was in the best interests of the estate, the liabilities resulting from a subsequent breach are granted administrative expense priority that will not be subject to the limitation of § 503(b)(1)(A), which provides that adminis-

---

1. The *Multech* court also held that the lessor's claim for damages from the termination of the lease was not limited by the ceiling normally imposed on such a claim by former 11 U.S.C. § 502(b)(7), now § 502(b)(6). This Court need not reach this issue because LIG's claim for rent covers a period of less than one year and is therefore below the § 502(b)(6) limit in any event.

2. The lease in question in *Multech* was also not formally rejected but the court found that the "drop dead" provision in its order approving

assumption of the lease in essence provided that default was tantamount to rejection. 47 B.R. at 750 n. 3. The "drop dead" provision provided for immediate relief from stay for the lessor upon verified application showing debtor's default. 47 B.R. at 749. Thus, the case at bar may be substantially the same as *Multech*, since it is unclear whether the "drop dead" provision considered by the *Multech* court specifically provided that default would be deemed to be a rejection.

trative expenses are the actual, necessary costs and expenses of preserving the estate. 47 B.R. at 752. Thus, both the debtor, by asking that assumption be allowed, and the Court, by approving the assumption, projected that the benefits which the estate would gain from accepting the lease outweighed the burdens assumed by the debtor, including the burden to cure pre-petition arrearages. If the projection that benefits outweigh detriments proves to be wrong, it appears that unsecured creditors, rather than the lessor, will suffer the loss since the assumption was intended for the creditors' benefit. As the *Collier* treatise states in its discussion of the predecessor to § 365 under the Bankruptcy Act of 1938:

> The price for securing the potential margin of benefit to the estate may be high. It is nothing short of complete mutuality, that is, assumption by the estate of the bankrupt's liabilities, not as a matter of granting a distributive share, but by performance in full, just as if bankruptcy had not intervened. It is for the trustee first to decide after careful and conscientious deliberation whether it is advisable to stand upon the contract. If the trustee so elects and the court approves, the consequent assumption of liability operates, on a smaller scale, in much the same fashion as a general continuance of the bankrupt's business by this trustee. His "continuing in business" with regard to the contract is an act of administration, and the expenses and liabilities he incurs are expenses of administration.

2 *Collier on Bankruptcy* ¶ 365.01[2] at 365–12 (15th ed. 1987) (footnote omitted).

The Court thus concludes that LIG is entitled to administrative expense priority for the entire pre-petition and post-petition arrearage claim. As to the timing of payment, LIG's motion requests the Court to direct payment within fifteen days from the entry of this Order. Considering the fact that LIG is protected, to some extent, by its lien on the debtor's equipment, the Court is of the opinion that the circumstances of this case do not warrant payment of LIG's claim prior to the effective date of a plan, when other administrative claims are required to be paid pursuant to § 1129(a)(9).

Accordingly, it is ORDERED that LIG's motion for payment of administrative expense is GRANTED to the extent that LIG is entitled to administrative expense priority for both pre-petition and post-petition claims arising from the breach of the assumed lease, and DENIED to the extent that LIG seeks payment of its claim within fifteen days.