**In re JOHNSTON, INC., d/b/a Johnston's Fashions for Children, Debtor.**

Bankruptcy No. 92–40316.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Jan. 7, 1994.

Samuel M. Stricklin, Dallas, TX, for appellant Desert Hills Factory Stores.

## MEMORANDUM OPINION

C. HOUSTON ABEL, Chief Judge.

Before the Court is a Motion to Alter or Amend Order Granting in Part and Denying in Part Motion for Allowance and Payment of Administrative Priority ("Motion") filed by Desert Hills Factory Stores ("Desert Hills"), a former landlord of the Debtor. The Motion seeks reconsideration of the Court's denial of Desert Hills' request that the loss of future rents and its attorney and management fees be given priority as a Chapter 11 administrative expense. After reviewing the Motion, the Court is of the opinion that the Motion should be GRANTED IN PART and DENIED IN PART.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (B).

### FACTS

1. On March 25, 1992, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. On May 22, 1992, the Debtor filed a Motion to Assume Unexpired Lease with Desert Hills. The Debtor leased from Desert Hills space in a shopping center located in Cabazon, California in order to operate a children's clothing outlet. The base monthly rent for the space was $2,572.00 plus $952.51 for miscellaneous expenses which included common area maintenance, promotion and insurance contribution.

3. The Court entered an order approving Debtor's assumption of the lease on July 9, 1992.

4. On November 10, 1992, an order was entered converting this case to Chapter 7 and the lease was subsequently rejected.

5. After the conversion, Desert Hills filed on January 19, 1993, an Application for Allowance and Payment of Administrative Expenses ("Application"). Desert Hills asserted in the Application it was entitled to the following Chapter 11 administrative expenses:

   a. Prepetition default of lease payments in the total amount of $2,556.86;

   b. Post-petition default of lease payments during the pendency of the Chapter 11 case in the total amount of $7,912.25;

   c. Post-petition loss of future rents (voluntarily capped at three months) in the total amount of $10,800.92; and

   d. Reasonable attorney fees ($518.00) and expenses ($89.93), and incurred management and administrative fees during the pendency of the Chapter 11 case ($475.00), for a total amount of $1,082.93.

The total Chapter 11 administrative expense claim was for $22,352.96.

6. Desert Hills also asserted in the Application that it was entitled to a Chapter 7 administrative expense claim as a result of the Debtor's continued occupation of the

leased space after conversion of the case in the total amount of $6,704.15.

7. The Court entered an order on March 10, 1993, allowing Desert Hills a Chapter 11 administrative expense claim in the total amount of $10,469.11. This claim was based on the unpaid lease payments which accrued during the time the Debtor actually occupied the leased premises, both pre and post-petition (to the date of conversion). The Court also allowed in full Desert Hills' Chapter 7 administrative expense claim in the total amount of $6,704.15. The Court, however, denied Desert Hills' request to claim as a Chapter 11 administrative expense the rents which would accrue after the Debtor vacated the leased premises (future rents) as well as the attorney and management fees and expenses.

## ANALYSIS

### A. RENTS

■ The issue before the Court is what is the effect of rejecting a lease which was assumed during the bankruptcy.[1] Desert Hills asserts that all damages that are incurred as a result of the rejection are automatically an administrative expense of the estate. Thus, future rents which would have been due had the Debtor fulfilled its obligations under the lease should be allowed as a Chapter 11 administrative expense. As support for treating the loss of future rents as an administrative expense, Desert Hills relies upon *In re Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992) and *In re Multech*, 47 B.R. 747 (Bankr.N.D.Iowa 1985).

The Court disagrees with Desert Hills' interpretation of the language in *Greystone*. In *Greystone*, the Fifth Circuit stated that "[t]he rights created by assumption of the lease constitute a post-petition administrative claim under section 503(b)(1)(A) of the Code." *Greystone*, 995 F.2d at 1281. Desert Hills argues that this means that all expenses and liabilities incurred after the assumption of the lease are afforded administrative expense priority, even if the lease is subsequently rejected. However, this Court is of the opinion that *Greystone* was not intended by the Fifth Circuit to be interpreted so broadly. Unlike the lease here, the lease at issue in *Greystone* had never been assumed or rejected. Thus, the Fifth Circuit was not faced with the issue of the effect of rejecting a lease which was previously assumed during the bankruptcy. Accordingly, this statement must be considered in the context of the facts before the Fifth Circuit. That is, all expenses and liabilities incurred while the lease is *in effect* are an administrative expense. *Greystone* in no way attempts to address the murky issue of what happens when an assumed lease is subsequently rejected.[2]

The Court acknowledges, however, that its prior finding that the loss of future rents is not an administrative expense is contradictory to that in *Multech* and the cases that follow.[3] The court in *Multech* clearly held that all liabilities flowing from a lease that

---

1. Although the Bankruptcy Code has no specific section to address this issue, the former Bankruptcy Act unambiguously provided that "[w]hen a contract entered into or assumed in a superseded proceeding is rejected, the resulting liability shall constitute a cost of administration of the superseded proceeding." 11 U.S.C. § 778(b). Under the Code, no comparable section exists.

2. The statement in *Greystone* is in accordance with the prior decision by the Fifth Circuit in *In re Braniff Airways, Inc.*, 783 F.2d 1283 (5th Cir. 1986). In *Braniff*, the Fifth Circuit stated that if a lease is assumed, "the debtor's estate becomes liable for the full rent accruing under the terms of the lease." *Braniff*, 783 F.2d at 1285. As in *Greystone*, the Fifth Circuit in *Braniff* was not required to determine the effect of rejecting an assumed lease. The lease in *Braniff* was rejected

without ever being previously assumed. Whether all rents, including unearned future rents, are to be treated as an administrative expense, the Fifth Circuit did not say.

3. Of the few published case which have addressed the issue before the Court, most have cited the holding in *Multech* as authority. *See generally In re Pearson*, 90 B.R. 638 (Bankr. D.N.J.1988); *In re Norwegian Health Spa, Inc.*, 79 B.R. 507 (Bankr.N.D.Ga.1987); *In re Mushroom Transp. Co., Inc.*, 78 B.R. 754 (Bankr. E.D.Pa.1987); *In re World Wines, Ltd.*, 77 B.R. 653 (Bankr.N.D.Ill.1987). *Cf. In re Monica Scott*, 123 B.R. 990 (Bankr.D.Minn.1991) (although the court held that the loss of future rents is an administrative expense, the court rejected the reasoning in *Multech*).

was assumed in a Chapter 11 proceeding, including the loss of future rents, are regarded as a Chapter 11 administrative expense. *Multech,* 47 B.R. at 750. In reaching this conclusion, the *Multech* court held that 11 U.S.C. § 356(g) [4] "clearly indicates" that the "liabilities flowing from the rejection . . . [of an assumed] . . . lease will ever after be regarded as a Chapter 11 administrative expense." *Multech,* 47 B.R. at 750. Further, the court stated that all "liabilities and expenses arising from rejection of an assumed . . . [lease] . . . [are not] vulnerable to the limitations on administrative expenses imposed by section 503." *Multech,* 47 B.R. at 752. According to the court, since the assumption of the lease was approved by the court after careful scrutiny, any liabilities and expenses resulting from a subsequent rejection are *automatically* granted administrative expense priority. The court in *Multech* concluded that because the court previously found the lease to be in the best interest of the estate when it approved assumption of the lease, liabilities and expenses are automatically transformed into administrative expenses notwithstanding the fact that the liabilities and expenses may not have been actual or necessary to preserve the estate. *Id.*

This Court respectfully disagrees with the portion of *Multech* regarding the priority given to the loss of future rents. The holding in *Multech* that the loss of future rents is not "vulnerable to the limitations on administrative expenses imposed by section 503" violates statutory construction. To hold that a court's prior approval to the assumption of a lease negates the limitations under § 503 renders that section superfluous as to leases. *Conn. Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (courts should disfavor interpretations of statutes that render language superfluous). Section 365 of the Bankruptcy Code does not determine the priority given to expenses and liabilities incurred from the subsequent rejection of an assumed lease. That determination is to be based on the language and guidance of § 503 of the Bankruptcy Code. *In re Carmichael,* 109 B.R. 849, 851 (Bankr.N.D.Ill.1990).

Of the types of claims specifically allowed as an administrative expense, only § 503(b)(1)(A) is applicable. This subsection limits administrative expenses to "actual, necessary costs and expenses of preserving the estate". 11 U.S.C. § 503(b)(1)(A). In this era when courts are to apply the "plain meaning" of the Bankruptcy Code,[5] this Court cannot find that future rents rise to the level of costs and expenses that were actual and necessary to preserve the estate. Clearly, rents accruing after the Debtor has vacated the leased premises cannot be found to be either actual or necessary to preserving the estate. After the Chapter 7 Trustee removed the Debtor's inventory from the premises, the leased space became worthless to the estate. Since the Debtor unconditionally turned over to Desert Hills the leased space, rents accruing thereafter are a liability unrelated to the preservation of the estate.

---

**4.** Section 365(g) provides in pertinent part:
    Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an . . . unexpired lease of the debtor constitutes a breach of such . . . lease—

    .    .    .    .    .

    (2) if such . . . lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

    .    .    .    .    .

    (B) if before such rejection the case has been converted under section 1112 . . . of this title—
    (i) immediately before the date of such conversion, if such . . . lease was assumed before such conversion;

    .    .    .    .    .

    11 U.S.C. § 365(g). In summary, the applicable part of § 365(g) provides that a subsequent rejection of an assumed lease is considered to have occurred just prior to the date the case was converted.

**5.** *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); Walter A. Effross, *Grammarians at the Gate: The Rehnquist Court's Evolving "Plain Meaning" Approach to Bankruptcy Jurisprudence,* 23 Seton Hall L.Rev 1636 (1993).

■ The Court acknowledges that the inquiry under § 503(b) is not limited to the claims specifically allowed therein. The use of the word "including" implies that § 503(b) is not to be considered an all inclusive list. *See* 11 U.S.C. § 102(3). Because one of the goals of bankruptcy is to provide a fair and equitable return to each creditor based on their claim, courts should be wary of preferring one creditor's claim over another. *Braniff,* 783 F.2d at 1286 (granting of administrative expense priority will often disadvantage the general unsecured creditors). By finding that a creditor's unsecured claim is an administrative expense, a court is giving that claim priority over unsecured claims. *See* 11 U.S.C. § 507. Thus, any claim for administrative expense must be construed narrowly "in order to maximize the value of the estate for the benefit of the other creditors." *In re Atlantic Container Corp.,* 133 B.R. 980, 992 (Bankr.N.D.Ill.1991). For the overall intent of § 503(b) to be fulfilled, the party alleging that a claim is an administrative expense must establish that the estate as a whole benefitted and not just the individual creditor. *See In re TransAmerican Natural Gas Corp.,* 978 F.2d 1409, 1419 (5th Cir. 1992), *cert. dism'd,* —— U.S. ——, 113 S.Ct. 1892, 123 L.Ed.2d 646 (1993); *In re Templeton,* 154 B.R. 930, 933–34 (Bankr.W.D.Tex. 1993); *In re Carmichael,* 109 B.R. at 851.

■ Unlike the other courts which have addressed the issue, this Court is not convinced that the loss of future rents should be preferred over other general unsecured claims. The rents which were due after the lease was rejected were not incurred because of a benefit bestowed to the estate. The benefit the estate received from the lease ended when the Debtor unconditionally vacated the leased space. Awarding an administrative expense claim for the loss of future rents would be contrary to the intent of § 503(b) by unjustly enriching Desert Hills and could very well eliminate any distribu-

tion to the general unsecured creditors. For example, if a debtor assumes a long-term lease, e.g. 10 year term, and is subsequently forced to convert to Chapter 7 and reject the lease after only 2 years into the lease, a finding that the rents for the remaining 8 years of the lease are entitled to be classified as an administrative expense may very well thwart any chances that unsecured creditors would receive a portion of their claim. Any protection afforded by 11 U.S.C. § 502(b)(6) [6] would not be applicable because the limitations therein do not apply to administrative expenses. H.R.REP. No. 595, 95th Cong., 1st Sess. 353 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 63 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849, 6309. Thus, based on the logic in *Multech,* a landlord under this scenario clearly would receive a windfall since the landlord's claim for all future rents would be required to be paid before the unsecured creditors are paid.[7] And if this is an estate with little available assets to pay creditors, such a large administrative expense claim would more than likely prevent any return to other creditors. Such a scenario is inequitable and violates the goals of bankruptcy.

By finding that the loss of future rents is not an administrative expense, the Court is not unduly prejudicing the rights of Desert Hills as a result of the assumption of the lease. When the Court approved the assumption of the lease, Desert Hills' prepetition claim was given a higher priority. The assumption required the Debtor to cure all prepetition defaults promptly and transformed all liability on the prepetition claim from unsecured to an administrative status at the expense of other unsecured creditors. Thus, Desert Hills' prepetition position as an unsecured creditor was significantly improved as a result of the lease being assumed. Any detriment to Desert Hills because of the subsequent rejection of the lease does not warrant classifying all future rents

---

6. This section limits a landlord's unsecured claim for damages arising from the termination of a lease "to the rent unpaid on the date of bankruptcy plus the greater of one year's rent under the lease or 15% of the rent remaining under the lease." 2 *Norton Bankr.Law and Prac.* § 28.15 (1991).

7. Albeit after the payment of the allowed Chapter 7 administrative expenses. *See* 11 U.S.C. §§ 726(b) & 507(a)(1).

as an administrative expense. The Court finds no rational justification to create such a large potential administrative expense which could be catastrophic to the unsecured creditors.

Further, the Supreme Court has indicated that not all post assumption expenses and liabilities should be considered an administrative expense. The Supreme Court stated that if a debtor elects to assume a lease, "the expenses and liabilities incurred *may* be treated as administrative expenses". *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984) (emphasis added). By the use of the verb "may", the Supreme Court implied that a court's inquiry as to whether an expense or liability should be afforded administrative priority does not end because the court previously approved the assumption of the lease. If all expenses and liabilities flowing from the rejection are automatically an administrative expense, the Supreme Court would have used the verb "shall". Thus, the Supreme Court in *Bildisco & Bildisco* expressed its desire that *carte blanche* not be given to a landlord because a lease with that landlord had been assumed.

Finally, *Multech* placed too much weight on the fact that the lease was assumed with court authority. A court will approve a debtor's assumption of a lease if the lease is in the best interest of the estate. The finding that a lease is beneficial to the estate is based on the facts as they exists at the time of assumption. If forecasts made at the time of assumption turnout to be inaccurate, the fact that the court approved assumption of the lease should not be the determinative factor that all expenses and liabilities are an administrative expense. Although the expenses and liabilities incurred while the Debtor occupied the leased space were necessary to the preservation of the estate, this Court cannot reach the same conclusion for the loss of future rents.

## B. ATTORNEY AND MANAGEMENT FEES AND EXPENSES

The Court previously denied Desert Hills' request for attorney and management fees and expenses because no documentation was provided with the Application to support the claimed fees and expenses. Subsequent to the filing of the Motion, Desert Hills submitted an affidavit and billing statement in support of the attorney fees and expenses incurred prior to conversion of the case, but filed nothing to document the claimed management fees. After a review of the billing statement, the Court finds the attorney fees and expenses to be reasonable. Therefore, in accordance with the lease, the Court hereby allows an additional Chapter 11 administrative expense claim in the amount of $607.93. However, because no documentation was provided to justify the management fees, Desert Hills' claim for this alleged expense is denied.

## CONCLUSION

When the Court approved the Debtor's assumption of the lease with Desert Hills, the Debtor assumed the lease *cum onere. Bildisco & Bildisco,* 465 U.S. at 531, 104 S.Ct. at 1199. The Debtor accepted all benefits as well as all burdens of the lease. However, the assumption did not automatically transform all liabilities to an administrative expense. Specifically, the Court finds that the loss of future rents which is the result of the lease being rejected following the conversion of the case to Chapter 7 should not be given administrative priority. In so finding, the Court feels akin to the lone salmon swimming upstream against a raging current. The Court is of the opinion that the cases holding contrary to this Court's holding fail to comply with not only the intent of § 503(b) but the overall intent of the Bankruptcy Code. It is this Court's opinion that the awarding of an administrative expense claim for the loss of future rents clearly is inequitable and would unjustly enrich Desert Hills to the detriment of other unsecured creditors. Any claim based on the loss of future rents shall be treated as a general unsecured claim. Further, the Court hereby grants Desert Hills an additional Chapter 11 administrative claim in the amount of $607.93 for the incurred attorney fees and expenses. Thus, Desert Hills shall be allowed a Chapter 11 administrative expense claim in the total amount of $11,077.04 and a Chapter 7 admin-

istrative expense claim in the total amount of $6,704.15.

Accordingly, the Court will enter an order concurrently with this Memorandum Opinion GRANTING IN PART and DENYING IN PART the Motion.

IT IS SO ORDERED, ADJUDGED AND DECREED.