**In the Matter of Scott & Kimberly MASEK, Debtors.**

**No. BK02–82727.**

United States Bankruptcy Court, D. Nebraska.

Nov. 3, 2003.

Julie A. Frank, Omaha, NE, for debtors.

*MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

■ Hearing was held in Omaha, Nebraska, on October 8, 2003, on the Chapter 13 trustee's notice of intent to cease payments to Ford Motor Credit Company (Fil. # 52) and resistance by Ford Motor Credit Company (# 53). Julie Frank appeared for the debtor, Kathleen Laughlin appeared for as the Chapter 13 trustee, and Grant Forsberg appeared for Ford Motor Credit Company. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

The trustee proposes to discontinue payments to Ford Motor Credit because it obtained relief from the automatic stay to repossess and sell the collateral. Ford Motor Credit asserts that, as this was a leased vehicle and the debtors assumed the lease, the creditor is entitled to the full value of payments due thereunder, as an administrative expense under 11 U.S.C. § 503(b)(1)(A). In this case, the debtors were three payments in default (totaling $1,103.46) at the time the vehicle was repossessed, and owed five additional payments under the terms of the lease totaling $2,335.90, so Ford Motor Credit is

requesting an administrative expense of $3,439.36.

The resistance is sustained, and Ford Motor Credit will be allowed an administrative expense claim for the balance due under the terms of the lease.

The debtors filed this Chapter 13 case in August 2002. In their plan (Fil. # 4), they proposed the assumption of the lease entered into in November 2000 for their 2001 Mercury Mountaineer vehicle. Ford Motor Credit objected to confirmation (Fil. # 10), asserting that the debtors failed to provide adequate protection, failed to provide for curing the existing default of $930, and proposed to pay the purchase option price over time in contravention of the lease terms.

The parties subsequently signed a stipulation (Fil. # 18) whereby the debtors agreed to assume the lease, maintain insurance on the vehicle, cure the delinquency, continue making the regular monthly payment of $465 as adequate protection, and provide for Ford Motor Credit's $22,847.46 claim with surrender of the vehicle at the end of the lease term. The stipulation also established certain events of default, and specified that Ford Motor Credit would be entitled to relief from the automatic stay upon filing an affidavit setting forth the event of default. The stipulation was approved by the court (Fil. # 19) and incorporated into a confirmation order (Fil. # 20) in December 2002.

By February 2003, the debtors had fallen behind on post-petition payments to Ford Motor Credit, which filed an affidavit for relief (Fil. # 28). Ford Motor Credit withdrew the affidavit shortly thereafter (Fil. # 33). In July 2003, the debtors moved for a 60–day reduction in their monthly plan payments (Fil. # 44) due to loss of employment income. That request was granted in early August (Fil. # 48). Ford Motor Credit filed an affidavit of default in late August 2003 (Fil. # 50), noting that the debtors failed to make the June, July, and August payments and were in default for $1,103.46. Relief was granted the following day (Fil. # 51), and Ford Motor Credit repossessed and sold the vehicle. The present motion to cease payments to Ford Motor Credit followed.

The issue in this case is whether a post-assumption breach of a lease gives rise to an administrative expense claim, and if so, to what extent. Only a handful of cases have addressed the issue in the Chapter 13 context, and those that have rely on the reasoning of cases considering the issue in Chapter 11.

A debtor's assumption of a lease or executory contract changes the posture of the relationship between the parties to the contract. Some courts have explained the act of assuming a lease as "an act of administration that created an obligation of the postpetition bankruptcy estate which is legally distinct from the obligations of the parties prior to the assumption." *In re Pearson,* 90 B.R. 638, 642 (Bankr.D.N.J.1988) (citing *Samore v. Boswell (In re Multech Corp.),* 47 B.R. 747, 750–51 (Bankr.N.D.Iowa 1985)). A breach of the assumed obligations therefore constitutes a post-petition breach of post-petition obligations under 11 U.S.C. § 365(g)(2)(A), and is afforded administrative expense priority. *Pearson,* 90 B.R. at 642. Allowance of administrative expenses under § 503(b)(1)(A), combined with the power to assume an executory contract or unexpired lease in a Chapter 13 plan under § 1322(b)(7), renders claims resulting from assumption of a lease actual and necessary costs of preserving the bankruptcy estate. *Id.* at 644. *Pearson* was a Chapter 13 case in which the debtors assumed, then defaulted on, a vehicle lease. The court allowed an administrative claim for the

$6,000 balance due under the lease after the car was surrendered and sold.

The bankruptcy court in the Western District of Tennessee found the reasoning of *Pearson* and *Multech* persuasive in *In re Hall,* 202 B.R. 929 (Bankr.W.D.Tenn. 1996), and granted a landlord an administrative expense claim for post-petition rental charges on a residential lease that a Chapter 13 debtor assumed and subsequently defaulted on.

Likewise, in *In re Wright,* 256 B.R. 858 (Bankr.W.D.N.C.2001), the court reached the same conclusion regarding post-petition damages resulting from the Chapter 13 debtor's post-assumption rejection of a semi-trailer lease. The court cited, and followed, the reasoning of *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),* 78 F.3d 18 (2d Cir.1996), where the Second Circuit ruled that the analysis regarding the benefit to the estate of assuming a lease necessarily must take place at the time the lease is assumed, precluding a retroactive inquiry upon a breach into whether the lease provided a benefit to the estate. As a result, the full amount of damages arising from the rejection of an assumed lease were entitled to priority as an administrative expense. *Wright,* 256 B.R. at 860 (citing *Klein Sleep Prods.,* 78 F.3d at 25–26.). The *Wright* court noted that the Fourth Circuit had adopted the same reasoning in *Devan v. Simon DeBartolo Group, L.P. (In re Merry–Go–Round Enter., Inc.),* 180 F.3d 149 (4th Cir.1999).

In *Wright,* the court addressed the debtors' concern about the inequitable result of permitting an administrative expense priority for lease payments accruing after the property was surrendered. The debtors asserted that the rental payments could not be an actual and necessary cost of preserving the estate after they no longer had the property. The court said:

The Court is mindful that the treatment afforded to the claims of equipment or vehicle lessors under § 365(g)(2) provides them with significant advantages over secured creditors financing the purchase of similar property. The latter category of creditors would be left with a general, unsecured deficiency claim after disposition of its collateral in a similar plan modification scenario. In contrast, the lessor receives administrative expense priority for its claim, including all amounts remaining unpaid under the unexpired terms of the lease, as well as other charges and fees associated with early termination, mileage, etc. This result seems at odds with the general premise in bankruptcy that one creditor should not enjoy a windfall at the expense of other creditors. *See In re Monica Scott,* 123 B.R. 990, 993 (Bankr.D.Minn. 1991).

Nevertheless, the Court concludes that is the intent of § 365(g) as enacted by Congress and as interpreted by previous courts.

*Wright,* 256 B.R. at 861.

The *Multech* case from the Bankruptcy Court for the Northern District of Iowa has been widely followed among courts considering the issue of damages caused by the rejection or breach of an assumed contract. It involved a Chapter 11 debtor which assumed the lease of the real estate where its manufacturing operation was located. The debtor apparently defaulted on its lease payments, and the lessor obtained relief from the automatic stay and regained possession of the premises. The debtor subsequently converted the case to a Chapter 7. In the dispute between the lessor and the Chapter 7 trustee over the amount and characterization of the lessor's claim, the court noted that

[b]y defining the time at which a rejection of an assumed contract or lease constitutes a breach, section 365(g) clearly indicates that the act of assumption creates an administrative expense obligation of the particular proceedings in which the contract or lease was assumed. Consequently, if a lease is assumed in Chapter 11 proceedings, the liabilities flowing from the rejection of that lease will ever after be regarded as a Chapter 11 administrative expense.

47 B.R. at 750 (footnote omitted).

The court had little trouble giving administrative expense status to liabilities resulting from the rejection of an assumed contract or lease, ruling that a new entity was created at the filing of the petition, and that new entity, not the debtor, created an obligation for the estate by assuming the lease.

The filing of bankruptcy creates a new juridical entity that is separate and apart from the Debtor which existed prior to bankruptcy proceedings.... The assumption of an executory contract by a [Chapter 11] Debtor–in–Possession is an act of administration creating an obligation of the estate which is legally distinct from the obligations that existed prior to an assumption of the contract.... In contrast to the rejection of [an] unassumed contract which arises from a transaction with the prebankruptcy Debtor, the rejection of an assumed contract arises directly from a transaction with the Debtor–in–Possession. Thus, it is the Debtor–in–Possession which has caused legally cognizable injuries and the claims arising from those actions are entitled to priority as an administrative expense.

47 B.R. at 750–51.

The court also opined that not limiting the landlord's administrative expense claim arising from the rejection of an assumed contract "is only fair since the assumption of an executory contract reflects a business judgment by a Debtor–in–Possession that some benefit will inure to the estate and thus to unsecured creditors from assuming this particular prepetition obligation." 47 B.R. at 751. Although unsecured creditors may be harmed if the debtor misjudges the benefit to the estate, "they rather than the lessor should bear the risk since the assumption was initially intended to benefit them." *Id.*

In further ruling that the administrative expenses resulting from such a rejection are not limited to the actual and necessary costs of preserving the estate, the court noted that the benefits to the estate had been weighed when the contract was assumed and would not subsequently be revisited simply because the deal turned out to be a bad one.

[T]he Court would not permit the Debtor–in–Possession to assume an executory contract or lease unless the assumption was in the best interest of the estate. Having made that determination at the outset the liabilities and expense arising from rejection of an assumed contract, unlike other costs of administration that have not been subject to court scrutiny, are no longer vulnerable to the limitations on administrative expenses imposed by section 503. The onus is on the Court and the Debtor–in–Possession to evaluate carefully the potential benefits and burdens inhering in an executory contract because, if improvidently assumed, the burdens imposed by the contract may be overwhelming.... [T]he price for securing the potential margin of benefit through assumption of an executory contract may be high. Indeed, the cost of assumption is nothing short of complete mutuality and requires perform-

ance in full just as if bankruptcy had not intervened.

47 B.R. at 752.

The Second Circuit reached much the same conclusion in *Klein Sleep Products* when it found that the estate benefitted from all of the rights it assumed with the lease, even if the debtor subsequently defaulted and rejected the lease and surrendered the store:

> When the debtor-in-possession assumed the lease, it retained the right to occupy the leased premises immediately and in the future. Its ability to assign this immediate right of possession, as well as its ability to assign the future right of possession under the lease, had a present value at the time of assumption. Acquisition of those rights clearly constituted a benefit to the estate even if, later, the benefit turned to dust.

78 F.3d at 26.

One court, however, has rejected the reasoning in *Multech: In re Johnston, Inc.,* 164 B.R. 551 (Bankr.E.D.Tex.1994). The *Johnston* court ruled that a Chapter 7 debtor's rejection of a real estate lease it assumed prior to the case's conversion from Chapter 11 could not give rise to an administrative expense claim for future rents because there was no benefit to the estate after the debtor surrendered the premises. It ruled that *Multech* violated statutory construction in rendering section 503 superfluous by ruling it inapplicable to limit the amount of administrative expenses flowing from the loss of future rents. The *Johnston* court found that the benefits to the estate ended when the debtor vacated the leased premises, so awarding administrative expense priority for lost future rents would unjustly enrich the landlord and decrease the distribution to unsecured creditors. 164 B.R. at 555.

> Thus, based on the logic in *Multech*, a landlord under this scenario clearly would receive a windfall since the landlord's claim for all future rents would be required to be paid before the unsecured creditors are paid. And if this is an estate with little available assets to pay creditors, such a large administrative expense claim would more than likely prevent any return to other creditors. Such a scenario is inequitable and violates the goals of bankruptcy.

*Id.* (footnote omitted).

The court also observed that court approval of a lease assumption is based on the facts as they exist at the time, and such a determination should not bind the debtor, the lessor, and all of the unsecured creditors to an inequitable position in the future:

> Finally, *Multech* placed too much weight on the fact that the lease was assumed with court authority. A court will approve a debtor's assumption of a lease if the lease is in the best interest of the estate. The finding that a lease is beneficial to the estate is based on the facts as they exist[ ] at the time of assumption. If forecasts made at the time of assumption turn out to be inaccurate, the fact that the court approved assumption of the lease should not be the determinative factor that all expenses and liabilities are an administrative expense. Although the expenses and liabilities incurred while the Debtor occupied the leased space were necessary to the preservation of the estate, this Court cannot reach the same conclusion for the loss of future rents.

164 B.R. at 556.

In dicta, the court acknowledged the singularity of its position on the issue:

> The Debtor accepted all benefits as well as all burdens of the lease. However, the assumption did not automatically transform all liabilities to an administra-

tive expense. Specifically, the Court finds that the loss of future rents which is the result of the lease being rejected following the conversion of the case to Chapter 7 should not be given administrative priority. In so finding, the Court feels akin to the lone salmon swimming upstream against a raging current. The Court is of the opinion that the cases holding contrary to this Court's holding fail to comply with not only the intent of § 503(b) but the overall intent of the Bankruptcy Code. It is this Court's opinion that the awarding of an administrative expense claim for the loss of future rents clearly is inequitable and would unjustly enrich [the lessor] to the detriment of other unsecured creditors.

*Id.*

Another court has called the reasoning in *Multech* "inadequate," although it reached the same conclusion. *In re Monica Scott, Inc.,* 123 B.R. 990, 991 (Bankr. D.Minn.1991). The *Monica Scott* case involved a Chapter 11 debtor which assumed a lease of nonresidential real property. The debtor later breached the agreement and abandoned the premises, although the lessor refused to take the property back. The lessor sought allowance of an administrative expense claim for $18,000, representing the rent due from the date of abandonment through the end of the lease term.

The court took issue with two premises in the *Multech* decision; first, that a post-petition debtor is a separate entity from a pre-petition debtor, and second, that an unexpired lease is the same as an executory contract. On the first point, the court cited *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), for the premise that if a post-petition debtor were actually a "new" entity, the portion of the Bankruptcy Code authorizing it to assume or reject executory contracts would be unnecessary because the new entity would not be bound by the contracts at any rate. The Supreme Court suggested treating a debtor as the same entity which existed prior to bankruptcy, but with powers granted by the Bankruptcy Code to deal with its property in a manner it could not have utilized outside of bankruptcy. 123 B.R. at 991.

As to the second issue, the bankruptcy court pointed out that "[a] lessor of an unexpired, but consummated, lease ordinarily has no significant performance obligation remaining. The required substantial performance has been made by delivery of the leased property. Accordingly, no significant unperformed obligation of the lessor is reinstated upon assumption." 123 B.R. at 991–92 (footnote omitted). The court went on to note that the lessor is not jeopardized by the assumption, as the lessor's contractual rights are restored and performance by the debtor occurs, while the lessor's performance is complete.

However, the court observed that Congress apparently did not consider such reasoning important when drafting § 365(g), with the result that

> the grant of administrative priority to the total prepetition claim upon assumption, is the legislated price for the statutory negation of bankruptcy or insolvency clauses in leases. That appears to be an unreasonable price set by a policy that, in light of the overall purposes and objectives of the Bankruptcy Code, seems clearly misguided.

123 B.R. at 993.

Despite these ideological differences with congressional policy, the court reluctantly allowed the full amount of the administrative expense claim.

■ After considering all of these cases, and the Bankruptcy Code, I find that Ford

Motor Credit is entitled to an administrative expense claim for the balance due under the terms of the lease. The negotiation between the parties that resulted in the stipulated assumption of the lease created, in essence, a new agreement, as both parties made concessions in agreeing to continue with the lease. The debtors were allowed to keep the vehicle with the understanding they would remain current on payments and make appropriate provisions in their plan for the pre-petition deficiency and the return of the vehicle, while the creditor gave up its right to immediate possession of the vehicle upon the initial default. If Ford Motor Credit were not permitted to recover the payments it is otherwise entitled to, then the lease assumption caused only a detriment with no concomitant benefit, leaving the question of why a creditor would ever agree to a lease assumption under such circumstances.

This is an outcome that debtors and their attorneys will have to seriously consider when weighing the costs and benefits of lease assumption. If the debtors are fairly assured of their ability to continue making the lease payments during the pendency of the case, then the possibility of a large administrative expense claim may not be a significant deterrent to assuming the lease. However, if the debtors' economic situation is precarious enough that a post-petition default on the lease is a real possibility, then they should consider making other arrangements (in this case, for transportation), rejecting the lease, and dealing with the lessor's general unsecured claim rather than an administrative claim.

Separate order will be entered.