**In re Martin J. PEARSON, Debtor.**

**Bankruptcy No. 87–02433.**

United States Bankruptcy Court,
D. New Jersey.

June 20, 1988.

Jenkins & Jenkins by Jeffrey E. Jenkins, Haddon Heights, N.J., for debtor.

Farr, Wolf & Lyons by Kathleen M. Calemmo, Bellmawr, N.J., for General Motors Acceptance Corp.

Wood & Broege by Robert M. Wood, Manasquan, N.J., Standing Trustee.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter presently before the court is a motion by General Motors Acceptance Corporation ("GMAC") to allow an administrative claim against Martin J. Pearson, the debtor herein, resulting from the rejection by the debtor of an unexpired lease previously assumed under a confirmed Chapter 13 plan.

On April 23, 1987, the debtor filed a Chapter 13 petition under the Bankruptcy Reform Act of 1978 as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 (Bankruptcy Code). On April 28, 1987, the debtor filed his Chapter 13 Plan. The debtor's plan sought to assume a lease of a 1986

GMC Vandura with GMAC and cure $1,085.12 of arrearages owed on said lease through total monthly payments to the Standing Trustee of $78.00 for a period of thirty-six (36) months, of which $30.14 was to be paid monthly to GMAC through the plan. Unsecured creditors were to receive a ten percent (10%) dividend. Prior to the debtor's filing, the GMAC Vandura had been repossessed by GMAC due to the debtor's default under the terms of the lease.

On April 28, 1987, the debtor filed an Order to Show Cause to Compel the Turnover of the vehicle. The matter was resolved by a consent order. The terms of the consent order were reflected in a modified plan filed by the debtor on April 30, 1987. The modified plan proposed monthly payments of $87.16 to the Standing Trustee for a period of thirty-six (36) months. The modified plan permitted the debtor to retain the vehicle and sought to treat GMAC the same as in the debtor's initial plan, but also added disbursements for a repossession fee of $310.00 owed to GMAC and a $602.00 claim of the IRS, both to be paid under the plan along with a ten percent (10%) dividend to unsecured creditors. On May 13, 1987, GMAC filed a "secured proof of claim" for an "administrative claim" in the amount of $1,395.12, encompassing three months of arrearages owed by the debtor totalling $1,085.12 and the repossession fee of $310.00. The modified plan providing for the assumption of the lease with GMAC by the debtor was confirmed by this court in an order entered by the Honorable Judith H. Wizmur on August 20, 1987.

Subsequent to the confirmation of the plan, on October 13, 1987 GMAC filed a motion to vacate the stay in order to prosecute a replevin action to obtain possession of the vehicle and to pursue the debtor for the deficiency, if any on the account after the sale of the vehicle, or declaring the deficiency balance, if any realized as a result of the sale a non-dischargeable debt, alleging that the debtor had fallen behind in his monthly lease payments outside of the plan and failed to maintain insurance as required by the lease. Prior to the return date of the motion, the debtor voluntarily returned the vehicle to GMAC. GMAC's motion was subsequently withdrawn. GMAC exercised its rights under the Early Termination and Default Provision of the Lease Agreement and placed the vehicle for sale with an auctioneer. The vehicle was sold by Carriage Trade Auto Auction for $11,238.34. After application of all credits and deductions there remains due to GMAC the amount of $6,065.93 (*See* Certificate of Amount Due filed by GMAC on March 31, 1988).

On February 9, 1988, the debtor filed a modification of his Chapter 13 Plan. Under the plan, the debtor sought to reject the lease with GMAC after surrendering the vehicle. The plan provided for monthly payments of $87.00 to the Standing Trustee for thirty-six (36) months from which the IRS would be paid $602.00. Counsel for the debtor would be paid $150.00 on account of attorneys' fees and unsecured creditors would be paid *pro rata* on account of allowed claims. On March 31, 1988, GMAC filed a motion to allow administrative claim as a result of the Assumption of the Lease Agreement. GMAC contends that the debtor's rejection of the lease after a prior assumption acts as a post-petition breach giving rise to an administrative claim. The debtor contends that the provisions of 11 U.S.C. § 365 do not necessarily apply to Chapter 13 proceedings and that to allow an administrative claim in excess of $6,000.00 in favor of GMAC would not be equitable or fair to the debtor or other creditors.

A hearing on the matter was held on May 4, 1988. The issues have been briefed and argued by both parties and are ripe for determination.

The threshold issue in the instant matter is a determination of the nature of the claim which arises when a debtor rejects an unexpired lease after previously assuming it under a confirmed Chapter 13 plan. Absent the post-petition assumption, GMAC's claim resulting from the debtor's rejection would be characterized as a general unsecured claim. 11 U.S.C. § 502(g), § 365(g)(1). *See also, In re Multech Corp.,*

47 B.R. 747, 750 (Bankr.N.D.Iowa 1985); *In re World Wines, Ltd.*, 77 B.R. 653, 656 (Bankr.N.D.Ill.1987). Different treatment, however, is afforded by the Code under § 365(g)(2) for executory contracts and unexpired leases that are assumed post-petition and then subsequently rejected. *In re Multech Corp., supra*, 47 B.R. at 747. Section 365(g) provides, in pertinent part:

> (g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
>> (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12 or 13 of this title, immediately before the date of the filing of the petition; or
>>
>> (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—
>>
>>> (A) if before such rejection the case has not been converted under section 1112, 1307, or 1208 of this title, at the time of such rejection; or
>>>
>>> (B) if before such rejection the case has been converted under section 1112, 1307, or 1208 of this title—
>>>
>>>> (i) Immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or
>>>>
>>>> (ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

Although § 365(g) does not directly set forth its effect on the priority of claims, its evident purpose is to distinguish, first, claims which are to be considered merely as the prepetition claims of general creditors (subsection (1)) from those assumed contracts which are to be treated as administrative expenses (subsection (2)). *In re Chugiak Boat Works, Inc.*, 18 B.R. 292,

296 (Bankr.D.Alaska 1982). The legislative history emphasizes the effect of § 365(g), namely, to give different treatment to subsection (2) claims, those which were assumed during a bankruptcy proceeding, from that given subsection (1) claims which, never having been assumed, follow the rule of § 502(g).[1] *In re Chugiak Boat Works, Inc., supra*, 18 B.R. at 296. Both the House and Senate Reports state in regard to § 365(g):

> Subsection (g) defines the time as of which a rejection of an executory contract or unexpired lease constitutes a breach of the contract or lease. Generally, the breach is as of the date immediately preceding the date of the petition. The purpose is to treat rejection claims as prepetition claims. The remainder of the subsection specifies different times for cases that are converted from one chapter to another. The provisions of this subsection are not a substantive authorization to breach or reject an assumed contract. Rather, *they prescribe the rules for the allowance of claims in case an assumed contract is breached,* or if a case under chapter 11 in which a contract has been assumed is converted to a case under chapter 7 in which the contract is rejected. (Emphasis added).

S.Rep. 95–989, 95th Cong. 2d Sess. 60 (1978); H.Rep. 95–595, 95th Cong. 1st Sess. 349 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5846, 6305.

In its brief, GMAC relies primarily on *In re Multech Corp., supra,* which involved a ten-year lease of industrial property entered into by the debtor, Multech, and Alice Boswell ("Boswell") in December 1975. Multech filed a Chapter 11 petition in January, 1982, at which time it was in arrears on the lease payments and real estate taxes. Shortly after the filing, Boswell requested relief from the automatic stay and also filed a motion to compel Multech to assume or reject the unexpired lease.

---

1. 11 U.S.C. § 502(g) states:

> (g) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

The *Multech* court heard both motions and entered an order finding that assumption was in the best interest of Multech and allowing it to assume the unexpired lease under the terms and conditions specified in the court's order. *See In re Multech Corp., supra,* 47 B.R. at 749. One of the terms in the order was a "drop dead" provision providing for immediate relief from the automatic stay upon verified application by Boswell's attorney that Multech had not complied with the order.

Shortly after the order was entered, Multech failed to perform under the assumed lease and the automatic stay was lifted to allow Boswell to pursue state law remedies. The *Multech* court was presented with an Application for an Adjudication of Law Points which required the court to determine the consequences that flow from the breach of an unexpired lease which had been previously assumed.

The *Multech* court held that a landlord under a lease which had been assumed and subsequently breached by a Chapter 11 debtor was entitled to administrative expense priority for the full amount of its damage claims under the lease. The court reasoned as follows:

> By defining the time at which a rejection of an assumed contract or lease constitutes a breach, section 365(g) clearly indicates that the act of assumption creates an administrative expense obligation of the particular proceedings in which the contract or lease was assumed. Consequently, if a lease is assumed in Chapter 11 proceedings, the liabilities flowing from the rejection of that lease will ever after be regarded as a Chapter 11 administrative expense. Likewise, the rejection of a lease that was assumed in Chapter 7 proceedings gives rise to a Chapter 7 administrative expense claim for the resulting damages.

. . . .

> The logic behind granting administrative expense status to liabilities flowing from the rejection of an assumed contract or lease is quite simple. The filing of bankruptcy creates a new juridical entity that is separate and apart from the Debtor which existed prior to bankruptcy proceedings. For instance, in Chapter 11 proceedings the prebankruptcy Debtor as a juridical entity ceases to operate the business and control is transferred to a distinct legal entity, usually the Debtor-in-Possession, who runs the business under supervision of the court. *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976). The assumption of an executory contract by a Debtor-in-Possession is an act of administration creating an obligation of the estate which is legally distinct from the obligations that existed prior to an assumption of the contract. *See generally,* 1 *Norton Bankruptcy Law and Practice* ¶ 23.05 (1981); 3 *Collier on Bankruptcy,* ¶ 365.08, p. 365–41 (15th ed. 1984). In contrast to the rejection of unassumed contract which arises from a transaction with the prebankruptcy Debtor, the rejection of an assumed contract arises directly from a transaction with the Debtor-in-Possession. Thus, it is the Debtor-in-Possession which has caused legally cognizable injuries and the claims arising from those actions are entitled to priority as an administrative expense. *In re Mammoth Mart,* 536 F.2d at 955.

*In re Multech Corp., supra,* 47 B.R. at 750–51 (footnote omitted).

The *Multech* court further held that the landlord Boswell's claim for damages was not limited by the provisions of § 502(b)(7) [2]

**2.** Section 502(b)(6) as that section is presently designated under the 1986 Act provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the

or § 503(b)(1)(A)[3] and should be allowed subject only to any limitations on damages imposed by state law. *Id.* at 752.

■■■ In the instant case, the debtor assumed the lease with GMAC under his Chapter 13 plan, as is his right under § 1322(a)(7).[4] At that time, the debtor assumed both the benefits and the burdens of the lease. *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789, 804 (N.D. Ill.1985). As the *Multech* court stated, the assumption was an act of administration that created an obligation of the postpetition bankruptcy estate which is legally distinct from the obligations of the parties prior to the assumption. *In re Multech Corp., supra,* 47 B.R. at 750–51. Any breach of the assumed obligations, whether in the form of a default or a formal rejection of the lease[5] thereby constitutes a breach by the postpetition debtor of postpetition obligations. This postpetition breach or rejection after a prior assumption is afforded priority as an administrative expense claim under 11 U.S.C. § 365(g)(2)(A). *In re Multech Corp., supra,* 47 B.R. at 750–51; *In re World Wines, Ltd., supra,* 77 B.R. at 656–56. *See also, In re Norwegian Health Spa, Inc.,* 79 B.R. 507, 509 (Bankr.N.D.Ga.1987).

The debtor has argued, in the brief submitted by counsel, that the *Multech* case involved a Chapter 11 debtor making a business decision to assume a business lease. The instant case, however, is a Chapter 13 case to which the debtor argues different principles and Code provisions apply. Specifically, the debtor cites the case of *In re Alexander,* 670 F.2d 885 (9th Cir. 1982) for the proposition that the provisions of "§ 365 do not apply to the matter of confirming a Chapter 13 plan, because § 1322(b)(7) provides that a Chapter 13 rejection operates apart from a rejection under § 365." *In re Alexander, supra,* 670 F.2d at 888. Although this court must give some credence to the Ninth Circuit's decision, it is not bound by its holding and respectfully disagrees with both its holding and rationale in *Alexander.*

Section 1322(b)(7) of the Bankruptcy Code provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(7) subject to section 365 of this title, provide for the assumption, rejection, of assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

In *Alexander,* the debtor entered into a contract to sell her house to the plaintiffs. On the day of closing, the plaintiffs tendered full performance, but the debtor refused to convey title or surrender possession. The plaintiffs brought a state court action for specific performance and, on the day of trial, the debtor filed a Chapter 13 petition. Under the debtor's Chapter 13 plan, she proposed to reject her contract with the plaintiffs.

---

remaining term of such lease, following the earlier of—
  (i) the date of the filing of the petition; and
  (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
  (B) any unpaid rent due under such lease without acceleration, on the earlier of such dates.

**3.** Section 503(b)(1)(A) provides:
  (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
  (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

**4.** 11 U.S.C. § 1322(b)(7) states:
  (b) Subject to subsections (a) and (c) of this section, the plan may—
  (7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

**5.** "[I]t is the act of assumption which results in the lease obligations being administrative expenses and not the act of formal rejection. If a debtor breaches an assumed lease, the breach occurs postpetition, whether or not the debtor formally rejects the lease and triggers the application of § 365(g)." *In re Norwegian Health Spa, Inc.,* 79 B.R. 507, 509 (Bankr.N.D.Ga.1987).

The plan was confirmed by the bankruptcy court. The plaintiffs then filed a complaint in the bankruptcy court seeking relief from the automatic stay to proceed with their state court action. The debtor argued that the sale contract was executory within the meaning of the Bankruptcy Code and that the contract could be rejected. The bankruptcy court granted judgment for the plaintiffs holding that the right to reject executory contracts existed only for the benefit of creditors, not for the benefit of the debtor, and the district court affirmed.

On appeal, the Ninth Circuit reversed and remanded the proceedings. In confronting the issue of the interaction between § 365 and § 1322(b)(7), that court stated: ·

> By its terms, § 1322(b)(7) provides that rejection under Chapter 13 operates apart from any rejection under § 365. Confirmation of the Chapter 13 plan is merely subject to the proviso in § 1325 that
>
> > (a) The court shall confirm a plan if—
> > (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title....
>
> Thus, confirmation of the plan becomes mandatory when (1) it complies with the provisions of Chapter 13 and (2) it complies with other applicable provisions of the title. Nowhere do the provisions of Chapter 13 make a Chapter 13 rejection of an executory contract subject to the court's discretion. Furthermore, other provisions of Title 11, in particular, § 365, do not apply to the matter of confirming the Chapter 13 plan, because § 1322(b)(7) provides that a Chapter 13 rejection operates apart from a rejection under § 365. This analysis leads to a simple conclusion: Once a Chapter 13 plan provides for the rejection of a genuine executory contract, the court's approval of that rejection is not required by the language of Chapter 13.

*In re Alexander, supra,* 670 F.2d at 888–89.

In *In re Meehan,* 59 B.R. 380 (E.D.N.Y. 1986), the District Court for the Eastern District of New York was faced with the issue of the interaction of § 365 and § 1322(b)(7). The court rejected the ·rationale of the Ninth Circuit in *Alexander,* stating:

> The plain language of § 1322(b)(7) simply states that a Chapter 13 plan may include provisions addressing any of the debtor's executory contracts or unexpired leases which have not already been rejected under § 365. It by no means implies that the bankruptcy court's general power to exercise approval over a trustee's proposed rejection is in any way circumscribed merely because a Chapter 13 plan has been filed. § 1325(a), which set forth the prerequisites for confirmation of Chapter 13 plan, specifically provides that a plan must comply with "the provisions of this chapter and with other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). § 365 is contained in Chapter 3 of the U.S. Bankruptcy Code, which the Code expressly makes applicable to cases involving Chapter 13. 11 U.S.C. § 103(a). As *Collier on Bankruptcy* notes, "The provisions of section 365 determine the legal consequences of the assumption or rejection of an executory contract or unexpired lease under the terms of a chapter 13 plan." 5 *Collier on Bankruptcy* Para. 1322.-01[1][G][ii] at 1322–14 [15th ed. 1985].

*In re Meehan, supra,* 59 B.R. at 384. The *Meehan* court also noted that the 1984 technical amendment to § 1322(b)(7) merely clarified the relationship between § 365 and § 1322:

> On July 10, 1984, Congress amended § 1322(b)(7) so as to add "subject to section 365 of this title" to the beginning of the subsection. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("Act").

Meehan asserts that this revision indicates the inapplicability of § 365 to the old § 1322(b)(7). The revision, she claims, was designed to bring § 365 to bear on a situation to which it previously was inapposite.

The legislative history of the Act and the form in which it was passed, however, do not support Meehan's contention. The amendment of § 1322(b)(7) is included in the section of the Act which sets forth miscellaneous technical amendments. The legislative history describes the change merely as stylistic. S.Rep. No. 65, 98th Cong. 1st Sess., 86 (1983). The 1984 amendment to § 1322(b)(7), therefore, merely clarified the existing provision rather than effecting a substantive change in the relationship between §§ 365 and 1322.

59 B.R. at 384–85.

This court agrees with the rationale of the *Meehan* court in holding that the provisions of § 365, in particular § 365(g)(2)(A), are applicable to Chapter 13 proceedings. This is especially true in light of the plain language of § 1322(b)(7) and the duty of the bankruptcy court under § 1325(a)(1) to determine that a proposed Chapter 13 plan complies with both the provisions of Chapter 13 and the remaining provisions of the Bankruptcy Code.

Section 365 embodies the long-established policy that a trustee or debtor-in-possession be empowered to make beneficial decisions to retain or discard a debtor's executory contracts and unexpired leases. The court in *In re Talley*, 69 B.R. 219, 221 (Bankr.M.D.Tenn.1986) articulated this policy by the Supreme Court:

[The assignees in an "assignment in bankruptcy"] were not bound ... to accept property of an onerous and unprofitable nature, which would burden instead of benefit the estate, and they could elect whether they would accept or not, after due consideration and within a reasonable time....

69 B.R. 219, 221, *citing, Sparhawk v. Yerkes*, 142 U.S. 1, 13, 12 S.Ct. 104, 106, 35 L.Ed. 915, 918 (1891).

The requirements for confirmation of a Chapter 13 plan are contained in 11 U.S.C. § 1325(a).[6] The court is required to confirm a Chapter 13 plan if, and only if, all six of the requirements of subsection (a) of § 1325 have been met. *In re Bowles*, 48 B.R. 502, 505 (Bankr.E.D.Va.1985). In this regard, the court is under independent duty to verify that the plan does in fact comply with the law irrespective of the lack of objection by creditors or the Chapter 13 Trustee. *Id.* Section 1325(a)(1) requires that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Among the provisions of Chapter 13 is the permissive contents of a plan outlined in § 1322(b), specifically, § 1322(b)(7) the language of which begins "subject to section 365 of this title ...."

The plain language of § 1322(b)(7) makes § 365 applicable to Chapter 13 proceedings and the court's independent duty under § 1325(a)(1) to determine that the plan complies with the provisions of the Code brings § 365 within the court's purview when confirming a plan. Thus, this court rejects the debtor's argument that § 365 is not applicable to the instant proceedings.

---

**6.** 11 U.S.C. § 1325(a) states:
(a) Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.

Accordingly, this court finds that the rejection by the debtor of its previously assumed lease with GMAC constitutes a postpetition breach under § 365(g)(2)(A) and gives rise to an administrative claim in favor of GMAC in the amount of $6,065.93 [7] for the resultant damages flowing from said rejection.

An appropriate order in compliance with this opinion shall be submitted by the parties.

---

7. The parties here have not disputed the calculation of damages under the Early Termination and Default Provision of the subject lease agreement. Nor has the debtor asserted that any limitation on damages should be imposed under any relevant state law.