*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: CLAYTON PARMENTER and LYDIA
PARMENTER,

*Debtors.*

No. 07-1262

---

FORD MOTOR CREDIT COMPANY,

*Appellant,*

*v.*

BANKRUPTCY ESTATE OF CLAYTON PARMENTER and
LYDIA PARMENTER and DAVID RUSKIN, Chapter 13
Trustee,

*Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13565—Anna Diggs Taylor, District Judge.

Argued: February 5, 2008

Decided and Filed: May 30, 2008

Before: MARTIN and SUTTON, Circuit Judges; OBERDORFER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Richardo I. Kilpatrick, KILPATRICK & ASSOCIATES, Auburn Hills, Michigan, for Appellant. Thomas D. DeCarlo, OFFICE OF THE STANDING CHAPTER 13 TRUSTEE, Southfield, Michigan, for Appellees. **ON BRIEF:** Richardo I. Kilpatrick, KILPATRICK & ASSOCIATES, Auburn Hills, Michigan, for Appellant. Thomas D. DeCarlo, David W. Ruskin, OFFICE OF THE STANDING CHAPTER 13 TRUSTEE, Southfield, Michigan, for Appellees.

The court delivered a PER CURIAM opinion. SUTTON, J. (pp. 5-8), delivered a separate dissenting opinion.

---

[*] The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

———————————

**OPINION**

———————————

PER CURIAM.  In this bankruptcy case, Ford Motor Credit Company challenges the denial of its motion for administrative expenses arising from Clayton and Lydia Parmenter's default on a lease that they assumed direct responsibility for paying as part of their Chapter 13 plan.  Because the terms of this confirmed Chapter 13 plan bind Ford, we affirm.

I.

In 2003, the Parmenters leased a Ford Explorer, which required them to make 36 payments of $388.14 over the course of three years.  Before the lease ended, the Parmenters filed a Chapter 13 bankruptcy petition.  Under their proposed bankruptcy plan, the Parmenters agreed to assume the Ford lease and to pay the remaining lease payments directly to Ford, while the Trustee took responsibility for paying all other claims to the Parmenters' creditors.  No one filed an objection to the plan, and the bankruptcy court confirmed it.  The confirmation order required the Parmenters to pay $467 into the plan each week until the Ford lease expired.  After that, payments would increase to $567 per week for the remainder of the three-year bankruptcy plan.

Shortly after confirmation of the plan, the Parmenters defaulted on the car lease.  The bankruptcy court granted Ford's motion for relief from the automatic stay, and Ford repossessed the Explorer and sold it at an auction.  Afterwards, Ford filed a motion for administrative expenses of $5,919.28, which included the deficiency balance on the lease and attorney fees.  The bankruptcy court denied Ford's motion because "the assumption did not confer a benefit upon the Estate," JA 37, and because "the confirmed plan is res judicata as to the rights of the parties," JA 93.  The district court affirmed.

II.

In assessing whether the bankruptcy court correctly denied Ford's motion for an administrative-expense claim, we start with the terms of the Chapter 13 bankruptcy plan.  In a Chapter 13 case, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  11 U.S.C. § 1327(a).

Section I.D of the plan governs the "[t]reatment of claims" and lists the priority with which they will be paid.  The first class of claims, "Class One—Administrative Expenses," includes trustee and attorney fees, JA 5, which "shall be paid in advance of other[]" claims, JA 8.  Conspicuously absent from these expenses is any mention of the Ford lease.  Instead, the Ford lease falls under "Class Three—Executory Contracts and/or Unexpired Leases," with a notation that the lease would be "[a]ssume[d]" and that monthly lease payments of $389 would be "[p]aid [d]irect by Debtor." JA 6.  Other claims include:  "Class Two—Continuing Claims" for a mortgage; "Class Four—Arrearage on Continuing Claims"; and "Class Five—Other Secured Claims" for payments to the city water department and the county treasurer.  JA 6.  Once these claims have been paid, the plan permits the payment of "Class Eight—General Unsecured Claims," which primarily include debts to credit card companies, all paid at 10% of their face value.  JA 7.

The plan required the Trustee to pay all of these claims, except the Ford lease payments.  *See* 11 U.S.C. § 1326(c) ("Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.").  The Parmenters chose to treat the lease differently:  They opted to assume the lease and make direct payments to Ford, as also permitted by the Code.  *See id.* ("Except as otherwise provided in the plan . . . ."); *see also id.*

§ 1322(b)(7) (providing for assumption of a lease under a Chapter 13 plan). Under the plan, then, neither the Trustee nor the estate took on an obligation of paying Ford for the lease. And the plan deducted the value of the lease payments from the amount that the Parmenters otherwise would have paid into the plan. By confirming the plan, the bankruptcy court made these terms "bind[ing] [on] the debtor and each creditor." *Id.* § 1327(a).

As we see it, Ford's administrative-expense claim seeks relief that the plan does not permit— transforming a class three claim into a class one claim and, in the process, leapfrogging other creditors. Ford, like all creditors and the debtor, is bound by the terms of a confirmed plan and accordingly may not unwind those terms in order to elevate its losses into administrative expenses. *See id.* ("The provisions of a confirmed plan bind . . . each creditor, *whether or not* the claim of such creditor is provided for by the plan . . . .") (emphasis added). The plan says nothing about permitting the estate to make lease payments to Ford. Yet Ford's motion, if granted, would allow the company to impose an obligation on the estate where none existed and indeed would give that claim the highest priority permitted. Well before the Parmenters defaulted, Ford had made its own bed outside the plan and now must lie in it: If the car company wishes to obtain any *additional* relief against the Parmenters, it must do so outside the plan.

A bankruptcy court, it is no doubt true, may modify a plan in some circumstances, but this is not one of them. *See id.* § 1329(a) (permitting a court to modify the plan to "(1) increase or reduce the *amount* of payments on claims of a particular class provided for by the plan; (2) extend or reduce the *time* for such payments; (3) alter the *amount* of the distribution to a creditor whose claim is provided for by the plan . . . ; or (4) reduce *amounts* to be paid under the plan by the actual amount expended by the debtor to purchase health insurance") (emphases added). As § 1329(a) indicates, the changes permitted by the Code concern modifications to the amount and timing of payments, not to the creation of a new obligation on the estate, least of all one that trumps other claims.

In addition to the decision below, two cases from the same district have reached a similar conclusion. *See generally In re White*, 370 B.R. 713 (Bankr. E.D. Mich. 2007); Transcript of Hearing and Oral Opinion, *In re Hackman*, No. 05-78798 (Bankr. E.D. Mich. Apr. 24, 2007). In *White*, the debtors assumed a car lease with Ford under a Chapter 13 plan, which listed the lease as a class three claim and noted that the debtor "would make the monthly payments directly to Ford." 370 B.R. at 715. After confirmation, the debtors defaulted on the lease and turned the vehicle over to Ford. *Id.* at 715–16. Ford filed a motion for administrative expenses for excess mileage, sales tax and a monthly lease payment, *id.* at 716, which the court denied, *id.* at 717. The court reasoned that, when the debtors opted to assume the lease, they became obligated to make the monthly payments and to pay "any other sums that became due at any time in the future under the terms of the [l]ease." *Id.* at 718. "Under § 1327(a)," the court explained, "confirmation of a Chapter 13 plan is, in effect, an adjudication of litigation over the issues of the classification and treatment of claims provided for in a proposed Chapter 13 plan, and is *res judicata* on those issues." *Id.* Reasoning that the plan designated the lease as a class three claim rather than a class one claim, the court held that any claim for "sums due under the assumed lease" should follow the treatment of the claim provided in class three—"that such sums are to be paid directly by Debtors, not by the Chapter 13 Trustee." *Id.* Reclassification of the claim, it added, was not a permissible modification under § 1329(a). *Id.* at 718–19 (citing *In re Nolan*, 232 F.3d 528, 533 (6th Cir. 2000)).

Our conclusion also respects the goals "of obtaining a maximum and equitable distribution for creditors and ensuring a 'fresh start' for individual debtors, which the [Supreme] Court has often said are at the core of federal bankruptcy law." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563 (1994). If we permitted Ford's claim, we would assuredly upset the reasonable expectations of other creditors—first by allowing Ford's claim to trump other claims and second by potentially depleting many of the estate's assets designated for other creditors. Because the Parmenters assumed the lease

and took responsibility for making lease payments, the other creditors had no reason to expect that Ford would step ahead of them in line if a default occurred. The Parmenters' plan payments were reduced by the amount of their monthly lease payments, and their payments were not scheduled to increase until after the lease expired. Awarding administrative expenses now, without the benefit of the extra $389 per month, would leave the estate with the *same* amount of money yet *greater* claims to pay—hardly a recipe for a successful Chapter 13 plan. If Ford wanted the security of receiving payments directly from the Trustee, it should have objected to the proposed plan.

In advancing a different approach to this case, Ford relies on Chapter 11 cases that have allowed administrative expenses when a debtor-in-possession assumes a lease and later defaults. *See, e.g.*, *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 28 (2d Cir. 1996); *In re Multech Corp.*, 47 B.R. 747, 750–51 (Bankr. N.D. Iowa 1985). Several courts, it adds, have embraced this reasoning in addressing assumed leases in Chapter 13 plans. *See, e.g.*, *In re Wells*, 378 B.R. 557, 561–63 (Bankr. S.D. Ohio 2007); *In re Masek*, 301 B.R. 336, 337–42 (Bankr. D. Neb. 2003); *In re Hall*, 202 B.R. 929, 934–36 (Bankr. W.D. Tenn. 1996); *In re Pearson*, 90 B.R. 638, 642–44 (Bankr. D.N.J. 1988). But there is a material difference between the two settings: Whereas a Chapter 11 debtor-in-possession acts on behalf of the estate when it assumes a lease and thus creates a legal obligation on the estate, *see In re Multech Corp.*, 47 B.R. at 750–51, a Chapter 13 debtor who assumes and pays for a lease outside of the plan does not.

That is why *In re Wells*, perhaps the most analogous case and the most extensively reasoned one to make this point, does not persuade us. *Wells* reasoned that "[i]t is well-established that the act of assumption obligates the bankruptcy estate," citing authorities involving Chapter 11 bankruptcies. 378 B.R. at 561. The court went on to explain that in a Chapter 13 case, "[e]ven if a plan requires a debtor to make direct payments to a lessor outside the plan, the assumption of the lease obligates the estate as guarantor." *Id.* But this critical link in the court's chain of reasoning does not necessarily follow, and indeed the court cited no authority to support it. Because the debtor elected to assume the lease and pay it directly, Ford cannot now say that the estate was a latent guarantor of the lease. The parties entered into a contract, and the bankruptcy court ratified it. Therefore, *res judicata* applies.

III.

For these reasons, we affirm.

---

**DISSENT**

---

SUTTON, Circuit Judge, dissenting. I see this case differently. The confirmed plan does not say one way or the other whether Ford may receive administrative expenses for the Parmenters' default. Given the silence of the plan on the issue at hand, *res judicata* principles offer no answer—not even a hint—about how to resolve this claim. Instead, we must start with the following first principles established by the Bankruptcy Code and case law:

● Chapter 11 debtors-in-possession and Chapter 13 debtors may assume unexpired leases—like the car lease at issue here. *See* 11 U.S.C. § 365(d)(2) (trustees); *id.* § 1107(a) (debtors-in-possession); *id.* § 1322(b)(7) (Chapter 13 debtors); *see also* 1 Keith M. Lundin, Chapter 13 Bankruptcy § 56.1, at 56-1 to -2 (3d ed. 2000 & Supp. 2004).

● When a Chapter 13 debtor assumes an unexpired lease, either the trustee may become the disbursing agent for the lease payments or, as happened here, the debtor may pay the creditor directly. *See* 11 U.S.C. § 1326(c).

● When a Chapter 11 debtor-in-possession assumes an unexpired lease and later defaults on the lease payments, the court may treat the resulting deficiency as an administrative-expense claim. *See In re Merry-Go-Round Enters., Inc.*, 180 F.3d 149, 156 (4th Cir. 1999); *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 28 (2d Cir. 1996); *In re Frontier Props., Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992); Collier on Bankruptcy Practice ¶ 365.09; 2 William L. Norton, Bankruptcy Law & Practice (Third) § 46:25; *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984); *In re Revco D.S., Inc.*, No. 93-3597, 1994 WL 376884, at *1 n.4 (6th Cir. July 18, 1994); *In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1509 n.5 (11th Cir. 1985).

● When a Chapter 13 debtor assumes a lease and the trustee serves as the disbursing agent of the lease payments, the case law treats deficiencies arising from post-confirmation defaults as administrative expenses. *See In re Masek*, 301 B.R. 336, 338 (Bankr. D. Neb. 2003); *In re Pearson*, 90 B.R. 638, 642 (Bankr. D.N.J. 1988); *see also* 4 Lundin, *supra*, § 296.1, at 296-1.

So far so good. To my knowledge, no case or treatise directly contradicts these points of law, and, as I read the parties' briefs and the majority opinion, they do not challenge them either. What primarily divides the parties is this: If a Chapter 13 debtor assumes the lease, agrees to pay the creditor directly and later defaults on the lease, does the default create a cognizable administrative-expense claim in favor of the creditor? I think it does.

*First*, I see no convincing reason for treating creditors dealing with a Chapter 13 debtor differently from creditors dealing with a Chapter 11 debtor-in-possession. The Code offers no basis for treating the two scenarios differently. In both settings, a claim arising from a default on an assumed lease amounts to a post-petition claim. Under § 365(g), which applies to Chapter 11 and Chapter 13 bankruptcies, a default on an assumed lease is treated as a rejection of the lease. *See In re Klein Sleep Prods.*, 78 F.3d at 26 (Chapter 11); *In re Wells*, 378 B.R. 557, 562 (Bankr. S.D. Ohio 2007) (Chapter 13); 2 Norton, *supra*, § 46:25. And under that section, the rejection of an *un*assumed lease results in a *pre*-petition claim, while the rejection of an *assumed* lease results in a *post*-petition claim. *See* 11 U.S.C. § 365(g). Because post-petition claims may qualify for administrative-expense status under § 503, *see In re Sunarhauserman, Inc.*, 126 F.3d 811, 817 (6th Cir. 1997), the rejection of assumed leases generally qualifies for such treatment—whether in a Chapter 11 or a Chapter 13 case, *see In re Klein Sleep Prods.*, 78 F.3d at 26 (Chapter 11); *In re Multech Corp.*, 47 B.R. 747, 750

(Bankr. N.D. Iowa 1985) (Chapter 11); *see also In re Pearson*, 90 B.R. at 638, 640, 645 (Chapter 13); 3 Lundin, *supra*, § 173.1, at 173-7 to -8.

Parallel treatment also serves the parallel reason for permitting both types of debtors to assume an unexpired lease after they file bankruptcy petitions. When a debtor-in-possession assumes a lease, say, for a building that houses its manufacturing operations during the pendency of a Chapter 11 reorganization and later cannot make payments, the landlord may obtain administrative expenses for "all future rent accruing under [the] assumed lease." *See In re Klein Sleep Prods.*, 78 F.3d at 28. That is because, without the assumed lease, the business likely could not generate the funds necessary to reorganize or to pay other creditors in the interim. No manufacturing operation can long survive without a physical plant, which is why "the total value of the estate has been enhanced by th[e] creditor's post-petition contribution, ultimately to the benefit of all general unsecured creditors." *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. 1992). Awarding administrative expenses in this setting thus not only promotes the goal of reorganization by "help[ing] a debtor get back on its feet and heading towards convalescence," *In re Klein Sleep Prods.*, 78 F.3d at 20, but it also ensures "fairness to all persons having claims against an insolvent," *Reading Co. v. Brown*, 391 U.S. 471, 477 (1968).

The same is true with the appropriate assumption of an unexpired car lease during a Chapter 13 bankruptcy. Without the car, the debtors may not be able to travel to a job. And without the job, the debtors may not be able to earn the very income they need to pay their creditors. *See In re Williamson*, No. 96-41777, 1997 WL 33474939, at *2 (Bankr. S.D. Ga. June 27, 1997) ("If the vehicle is used in a manner that facilitates the debtor's business, then the amount of any actual benefit derived by the estate should be considered an administrative expense.").

*Second*, if Chapter 11 debtors-in-possession and Chapter 13 debtors are equally entitled under the Code to assume unexpired leases after they file bankruptcy petitions and if their respective creditors are each entitled to seek administrative expenses after subsequent defaults, I see no basis for drawing a line between Chapter 13 creditors who receive lease payments directly from the debtor and those who receive them indirectly through a trustee. The Code offers no basis for drawing such a distinction: Section 365(g)(2)(A) treats all assumed leases in the same way, and § 503 applies to all administrative-expense claims. The debtor's assumption of a lease represents a transaction with the estate for purposes of § 503, no matter whether the trustee or the debtor delivers payment to the creditor. Either way, the payment reduces the amount of money left in the estate to pay other creditors. And the logistics of whether the trustee or the debtor disburses those payments have no impact on the degree of benefit that the act of assumption confers on the estate. Indeed, in some cases, direct payment by the debtor may well save money for other creditors, as the trustee charges a fee on all disbursements. *See* 28 U.S.C. § 586(e)(2); 3 Lundin, *supra*, § 157.1, at 157-1 ("[T]o avoid the payment of trustee's fees, Chapter 13 plans occasionally propose that the debtor will act as a disbursing agent to make payments directly to creditors."); *see generally* 1 Lundin, *supra*, § 64.4.

*Third*, the case law and commentary by and large support this approach, though it would be an exaggeration to say that the authorities all address this precise point. As I have shown, the cases uniformly hold that creditors of assumed leases are entitled to seek administrative expenses in the Chapter 11 context. As for Chapter 13, all of the cases (until three from the same district decided last year) permit creditors to file administrative-expense claims arising from defaults on assumed leases, though none of them specifically says whether it makes a difference who transfers the payment—the trustee or the debtor—and some of them do not even identify who the disbursing agent was. *See* Transcript of Hearing and Oral Opinion, *In re Devericks*, No. 05-24122, at 3, 8 (Bankr. E.D. Mich. Jan. 29, 2007) (debtor as disbursing agent); *In re Wells*, 378 B.R. at 558, 563 (debtor as disbursing agent); *In re Enderle*, 352 B.R. 444, 447 (Bankr. E.D. Mich. 2006) (disbursing agent not identified, though confirmation order shows it was the debtor); *In re Masek*, 301 B.R. at

336, 341–42 (trustee as disbursing agent); *In re Wright*, 256 B.R. 858, 861 (Bankr. W.D.N.C. 2001) (disbursing agent not identified); *In re Hall*, 202 B.R. 929, 931, 938 (Bankr. W.D. Tenn. 1996) (disbursing agent not identified); *In re Pearson*, 90 B.R. at 639, 645 (trustee as disbursing agent).

The leading Chapter 13 treatise embraces this view, and its author, the Honorable Keith Lundin, also draws no distinction based on the identity of the disbursing agent. "[I]f the debtor assumes an automobile lease after filing a Chapter 13 case and then has a change of heart and rejects the lease, any postpetition charges or damages for breach of the lease can be an administrative expense under § 365(g)(2)(A)." 4 Lundin, *supra*, § 296.1, at 296-1; *see also* 3 Lundin, *supra*, § 173.1, at 173-7 to -8; *id.* § 174.2, at 174-6. "The implications are obvious: Chapter 13 debtors must be counseled not to assume contracts or leases carelessly." *Id.* § 173.1, at 173-8.

Only one case by my reckoning—the district court decision here—has held that the identity of the disbursing agent makes a difference. In drawing this distinction, however, the court offered no convincing explanation why this fact should affect the analysis. Nor can I think of one.

All of this leaves one last redoubt for rejecting this administrative-expense claim—*res judicata*—the ground embraced by the majority. As the majority sees the issue, the *res judicata* effect given to a Chapter 13 plan precludes an administrative-expense claim because it would elevate the lease from a class three claim for an "Executory Contract[]" or "Unexpired Lease," as provided for in this Chapter 13 plan, to a class one "Administrative Expense[]" claim. JA 5–6. In one sense, it is right: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a); 3 Lundin, *supra*, § 229.1; *see also* 11 U.S.C. § 1329 (listing permissible modifications). But in another sense, it is wrong: Ford is not saying that, *before* the Parmenters defaulted on the assumed lease, the lease payments were entitled to priority class-one status as administrative expenses arising from the bankruptcy. Consistent with the confirmed plan, they were not. Rather, the point is that, when the Parmenters defaulted on the lease, the status of the lease as a post-petition obligation meant that any default on it generated a potential administrative-expense claim—just as it does when a Chapter 11 debtor-in-possession defaults on a lease or when a Chapter 13 debtor defaults on a lease for which the trustee is the disbursing agent.

Nor can anyone fairly suggest that Ford has engaged in a bait and switch, upsetting the reasonable expectations of either the trustee or other creditors at the time of confirmation. In view of the uniform case law on the point before this plan was confirmed, all of the participants had every reason to believe that a post-petition default on the car lease potentially could generate an administrative-expense claim. Adherence to a majority rule is not the kind of thing that generally disrupts expectations. If there were expectations entitled to *res judicata* effect, they went in the other direction—that Ford could seek administrative expenses stemming from a default. This was then, and should remain now, a rule on which parties can rely, *see In re Klein Sleep Prods.*, 78 F.3d at 22, and "a backdrop against which" they can negotiate, *id.* at 30—just as it is in the Chapter 11 context.

*In re Adkins*, 425 F.3d 296 (6th Cir. 2005), and *In re Nolan*, 232 F.3d 528 (6th Cir. 2000), do not favor a different conclusion. They hold only that a Chapter 13 party may not reclassify a secured claim as an unsecured claim after confirmation. *Adkins*, 425 F.3d at 303; *Nolan*, 232 F.3d at 535. That did not happen here.

While *In re White*, 370 B.R. 713 (Bankr. E.D. Mich. 2007), does support the majority's position, its reasoning is not convincing. Purporting to apply our decision in *Nolan*, *White* reasoned that *res judicata* precludes administrative expenses for damages under the lease because "in effect that would modify the confirmed plan to reclassify a non-administrative expense claim (Class Three)

as an administrative expense claim (Class One)." *Id.* at 719. But unlike the plan in *Nolan*, the plan in *White*, like the plan before us, "did not expressly" say what it could have said—"that [the creditor] is not entitled to an administrative claim in the event of default." *In re Wells*, 378 B.R. at 562. Ford thus "is not seeking to modify an express determination made under the confirmed plan." *Id.* at 562–63.

The *White* theory, if accepted, also would apply without regard to who the disbursing agent is and without regard to whether the claim arises in a Chapter 13 or a Chapter 11 bankruptcy. Whether trustees, debtors or for that matter debtors-in-possession take responsibility for paying a lease, they each are paying class-three (or lower) claims at the outset and they each are seeking class-one administrative-claim status when a default occurs. The *res judicata* approach to this problem would apply not just to leases paid by Chapter 13 debtors, then, but also to Chapter 11 leases and Chapter 13 leases paid by trustees. Yet that view runs into an unbroken line of Chapter 11 cases and contradicts the vast majority of Chapter 13 cases—and does so without a persuasive reason why. Better, I think, to stick with the prevailing rule in both bankruptcy settings, and instead remind trustees and creditors that they may object to Chapter 11 and 13 plans that run an undue risk of permitting lessor creditors to obtain better treatment than they deserve relative to the rest of the creditors and to plans that otherwise fail to adopt the most sensible way of nursing the debtor back to fiscal health.

The majority suggests that a lease assumed and paid directly by a Chapter 13 debtor cannot be an "actual, necessary cost[] of preserving the estate," 11 U.S.C. § 503(b)(1)(A), because the Chapter 13 debtor, unlike the Chapter 11 debtor-in-possession or the Chapter 13 trustee, does not act on the estate's behalf. But the degree to which a person acts on an estate's behalf has nothing to do with whether the lease was necessary to "preserv[e]" the estate. *Id.* The assumed lease serves the same function in either case. And nothing requires the Chapter 13 trustee to remain silent if he believes that assumption is not in the best interests of the estate. *See id.* § 1302(b)(2)(B); *In re Wells*, 378 B.R. at 561; 3 Lundin, *supra*, § 219.1, at 219-4 to -5.

Nor, contrary to the majority's contention, is there any meaningful difference between payments "outside" and "inside" the plan. As Judge Lundin puts it: "For reasons rooted in history and in the desire of debtors to avoid the payment of trustee's fees, Chapter 13 plans occasionally propose that the debtor will act as a disbursing agent to make payments directly to creditors. Once upon a time, this practice was called paying claims 'outside' the plan. More accurately, *all payments to creditors*, whether by the Chapter 13 trustee or directly from the debtor, are payments 'through' or 'pursuant' or 'under' or 'inside' the Chapter 13 plan." 2 Lundin, *supra*, § 157.1, at 157-1 (emphasis added) (internal footnotes omitted). All payments, in short, are under the plan. The majority seeing these issues differently, I respectfully dissent.